Frank SCOFIELD, Collector of Internal Revenue, Appellant,

v.

A. J. LEWIS and Grace M. Lewis, Appellees.

No. 16709.

United States Court of Appeals Fifth Circuit.

Jan. 20, 1958.

Charles K. Rice, Asst. Atty. Gen., Ellis N. Slack, Atty., Washington, D. C., John N. Stull, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Davis W. Morton, Jr., Attys., Dept. of Justice, Washington, D. C., John E. Banks, Asst. U. S. Atty., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellant.

Ben F. Foster, Ralph G. Langley, Foster, Lewis, Langley & Goode, San Antonio, Tex., for appellees.

Before CAMERON, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The appellees, A. J. Lewis and Grace M. Lewis, husband and wife, were members of a partnership which conducted two ranching operations in West Texas. They will be called taxpayers in this opinion. For Federal income tax reporting the taxpayers were on a cash basis and the partnership was on an accrual basis. The partnership's operation was organized for the purpose of breeding high quality cattle and sheep. From year to year the partnership sold the steer calves and the mutton sheep produced by its breeding herd. It also sold, from time to time, from its breeding herd, when required by age, disease, drought or other necessitous circumstance, some of its cows and ewes as well as some of the bulls and bucks and heifers which were unfit for breeding stock or which could not, for some other reason, be retained. During the tax years here involved, 1946 through 1949, no animals were sold which had not been held for six months except baby calves which were, of necessity, sold with their mothers. Operating on an accrual basis, the partnership carried its livestock which it raised for the markets on an inventory basis and these animals were valued under the unit-livestock-price method. For 1939 and years subsequent, including the years 1946 through 1949 here involved, the breeding stock was carried on the inventory. This was done in compliance with the Commissioner's Regulation which provided that "A taxpayer who elects to use the 'unit-livestock-price method' must apply it to all livestock raised, whether for sale or for breeding, draft, or dairy purposes." Under the unit-livestock-price method heifers were valued by the partnership at $40, yearlings at $45, two-year-olds at $50, and three-year-olds and over at $55, with the annual inventory increases treated as ordinary income. Ewe lambs were given similar treatment. The taxpayers returned their gains on the sales of breeding stock through 1949 as ordinary income.

In 1949 there appeared three tax decisions, Albright v. United States, 8 Cir., 1949, 173 F.2d 339; Emerson v. Commissioner, 12 T.C. 875; and Fawn Lake Ranch Co. v. Commissioner, 12 T.C. 1139, appeal dismissed, 8 Cir., 180 F.2d 749, each holding upon the particular facts of the case that sales of breeding herd animals were entitled to capital gains treatment for tax purposes. The taxpayers filed claims for refunds for the years 1946 through 1949 claiming the difference between the tax they had paid on profits from sales of breeding stock at ordinary income rates and the amount they would have paid, by their computation, on a capital gains basis. Before the Commissioner had acted upon the claim for refund the pertinent provision of the applicable Revenue Act had been amended. Section 117 of the Act, 26 U.S.C.A. (I.R.C.1939) § 117(j), excludes from capital gains tax treatment, among other things "property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year". In the Reve-

nue Act of 1951, 65 Stat. 452, 501, the following was included:

"Section 117(j) (1) is hereby amended by adding at the end thereof the following new sentences: 'Such term [property used in the trade or business] also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. Such term does not include poultry.' The first sentence added to section 117(j) (1) by the amendment made by this section shall be applicable with respect to taxable years beginning after December 31, 1941, except that the extension of the holding period from 6 to 12 months shall be applicable only with respect to taxable years beginning after December 31, 1950. The second sentence added to section 117(j) (1) by the amendment made by this section shall be applicable only with respect to taxable years beginning after December 31, 1950."

The Regulations promulgated by the Commissioner contained the following provisions:

"Farmers may change the basis of their returns from that of receipts and disbursements to that of an inventory basis provided adjustments are made in accordance with one of the two methods outlined in (1) and (2) below. It is optional with the taxpayer which method is used, but, having elected one method, the option so exercised will be binding upon the taxpayer for the year for which the option is exercised and for subsequent years unless another method be authorized by the Commissioner.

\* \* \* \* \* \*

"A taxpayer who elects to use the 'unit-livestock-price method' must apply it to all livestock raised, whether for sale or for breeding, draft, or dairy purposes. Once established, the unit prices and classifications selected by the taxpayer must be consistently applied in all subsequent years in the valuation of livestock inventories. No changes in the classification of animals or unit prices will be made without the approval of the Commissioner." Treas.Reg. 111, § 29.22(c)-6, as amended by T.D. 5423, 1945 C.B. 70.

By another Regulation the Commissioner directed that "in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method." The same regulation requires that "A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner", and that "a change in the method of accounting means \* \* \* a change from cash receipts to the accrual method, or vice versa", or a change involving the basis of valuation employed in the computation of inventories. Treas.Reg. 111, § 29.41–2.

On May 19, 1953, following the amendment to Section 117(j), the Commissioner acted upon the refund claims, recognized that the sales of breeding stock were entitled to capital gains treatment, allowed the claims in part, disallowed them in part, and assessed tax deficiencies for 1946 and 1949. The taxpayers sued for the amount of their claim which had been disallowed. The district court held that the proceeds of baby calves sold with their mothers should be taxed as ordinary income and $10 of the price of the pair was allocated as the price of the calf. No question is before us with respect to the tax incidents of the sale of the calves. The district court resolved the other questions for the taxpayers and entered judgment against the Collector, from which judgment he has appealed. Before the district court it was claimed by the Government, as it is claimed before us, that the taxpayers were on a unit-livestock-price inventory accrual basis and that they could not,

under the regulations, change from such basis to a cash basis and take the breeding stock out of the inventory without the consent of the Commissioner. Therefore, the Government says, the taxpayers are entitled to a capital gain measured by the difference between the accrued cost basis attributable to the breeding stock sold and the sales proceeds. The district court held that the taxpayers were entitled to a capital gain on the entire purchase price. In the Court's findings of fact it was recited:

> "The uncontroverted evidence shows and the Court finds that (i) such approval [of a change in accounting methods and inventory practices] could not have been obtained for the years involved because they had already passed when the issue arose (following the Albright decision in 1949) and (ii) the Commissioner had refused to consider and approve any such application until his Bureau Release of May 12, 1953, and (iii) that plaintiffs in their claims for refund and in the administrative hearings were seeking the right to correct a mistake by simply removing a capital asset that, under the terms of Section 117 (j) could not be the subject matter of an inventory, and which should never have been in the inventory in the first place."

The district court held that the portions of Regulations 29.22(c) which require the inclusion of breeding stock in a ranch inventory were in conflict with Section 117(j) and hence invalid, and that no change of accounting method was involved and therefore neither the approval nor consent of the Commissioner is required. The sole issue we are to determine is whether the cost basis to be used in computing the capital gain on breeding stock sold is zero, as the taxpayers claim, or a basis accrued under the unit-livestock-price method of inventory valuation, for which the Government contends.

In 1944 the Commissioner ruled that the cost basis of stock of a breeding herd

of a taxpayer on a cash receipts and disbursements basis had a zero cost on such livestock, but as to a taxpayer on an accrual basis the accrued inventory basis would be regarded as cost. By this ruling it was said that animals culled from a breeding herd as feeder or slaughter animals would not be treated as capital assets. I.T. 3666, 1944 C.B. 270. In the following year the Commissioner undertook to define animals "culled from the breeding herd" as including stock "which due to injury, age, disease or any other reasons (other than that of changing the breed or the quality of the offspring) are no longer desired by the livestock raiser for breeding purposes, and also the normal selection for sale of animals for the purpose of maintaining the herd at a regular size." I.T. 3712, 1945 C.B. 176. Two years later, on August 4, 1947, the Commissioner wrote a member of the Senate that "culls" would include all animals sold in excess of the animals added to the herd as long as the herd was held at normal size, and sales of culls would give rise to ordinary income. 1948 C.C.H. Par. 6091.

The resentment of stock breeders and dairymen at the Commissioner's efforts to restrict their capital gains treatment found its first reported expression in Albright v. United States, supra, from the Eighth Circuit. The Tax Court soon followed with its decisions in Emerson v. Commissioner, supra, and Fawn Lake Ranch Co. v. Commissioner, supra. In the Fawn Lake case the taxpayer used the unit-livestock-price inventory accrual method. The Tax Court held that the taxpayer using an inventory basis was no less entitled to capital gains treatment than was a taxpayer on a cash basis as in the Albright case. The cost basis used in the Fawn Lake case was the accrued inventory figure which was what the taxpayer there had contended for. Flato v. Commissioner, 14 T.C. 1241, affirmed on other grounds 5 Cir., 195 F.2d 580, and Kline v. Commissioner, 15 T.C. 998, had only the factual questions of whether the particular sales were of breeding stock. In 1951, in a

consolidation of five appeals, this court held that notwithstanding the I.T. rulings, stock breeders were entitled to capital gains treatment of animals culled from the herd where the usefulness of the animals had been lost and this regardless of the effect of the sales on the size of the herd. United States v. Bennett, 5 Cir., 1951, 186 F.2d 407. We find no reported case on the question which arose subsequent to the 1951 amendment to § 117(j).

The Government cites authority for the proposition that the Commissioner has power to prohibit the change of accounting methods by a taxpayer without the Commissioner's consent. Ross B. Hammond, Inc., v. Commissioner, 9 Cir., 1938, 97 F.2d 545; Jones v. Smith, 10 Cir., 1951, 193 F.2d 381; Advertisers Exchange, Inc., v. Commissioner, 25 T.C. 1086, affirmed, 2 Cir., 240 F.2d 958. There are, though, other rules with respect to the effect of the Commissioner's Regulations. The Regulations must, by their terms and in their application, be in harmony with the statute. A Regulation which is in conflict with or restrictive of the statute is, to the extent of the conflict or restriction, invalid. A Regulation, valid when promulgated, becomes invalid upon the enactment of a statute in conflict with the Regulation. The only authority conferred, or which could be conferred, upon the Treasury Department is to make regulations to carry out the purposes of the statute. Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977, rehearing denied 294 U.S. 734, 55 S.Ct. 635, 79 L.Ed. 1262; Newman v. Commissioner, 5 Cir., 1935, 76 F.2d 449, certiorari denied 296 U.S. 600, 56 S.Ct. 116, 80 L.Ed. 425.

A taxpayer in the business of raising cattle who maintained breeding stock as well as a herd raised for sale could not, under the Regulations, elect to use the unit-livestock-price method of inventory values as to the herd raised for sale without using the same method as to the breeding animals and thus be required to use an accrued basis as cost upon making sales. As to a taxpayer who had commenced such procedure before the decision in the Albright case and those subsequent to it, the Commissioner insisted that the unit-livestock-price inventory accruals be continued until his consent was given to a change, and at the same time refused to consider any applications to remove the breeding stock from the inventories. This, we think, was not what the Congress intended. We find nothing in the 1951 amendment to Section 117(j), or for that matter in the Section as originally passed, indicating a Congressional design to limit the extent of capital gains treatment accorded to taxpayers selling animals from a breeding or dairy herd because of their prior election to use the unit-livestock-price method. The problem involves accounting practices and, to be sure, methods of accounting in some circumstances may be determinative of tax liability, but such is not the case here. Animals in a breeding herd are capital assets and no cogent reason appears why one group of taxpayers should be allowed the full benefits of the capital gains provisions by the use of a zero basis and others should be limited to a basis measured by the accrual under an inventory method which a regulation unreasonably required be used as to breeding stock if it was to be used as to animals raised for sale. The intent of the Congress, as we discern it, in the enactment of the 1951 amendment to Section 117(j) is otherwise. The amendment clearly and unequivocally says that livestock held for breeding purposes is property used in the trade or business of the taxpayer. As to such livestock the taxpayers were not required to include them in an inventory or to use a unit-livestock-price method to determine the cost basis of animals sold. Cf. Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101.

We are in accord with the result reached by the District Court. Its judgment is

Affirmed.