**Van R. IRVINE and Herma W. Irvine,**
Plaintiffs,
v.
**UNITED STATES of America,**
Defendant (two cases).

**MORTONS INCORPORATED, Plaintiff,**
v.
**UNITED STATES of America,**
Defendant.
Civ. Nos. 4461, 4551, 4609.

United States District Court
D. Wyoming.
Jan. 24, 1963.

Loomis, Lazear & Wilson, Cheyenne, Wyo., and Holland & Hart, Denver, Colo., for plaintiffs in each case.

Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., and Burton A. Schwalb, Atty., Dept. of Justice, Tax Division, Washington, D. C., for defendant in each case.

KERR, District Judge.

Plaintiffs brought these actions pursuant to Section 1346(a) of Title 28, U.S. C., seeking to recover income taxes which they allege were illegally, erroneously and excessively assessed and collected by the

government. The facts and issues raised by the pleadings are so nearly identical that the three cases were consolidated for trial and for the purposes of this opinion they are now considered together on the single record. The parties have posed the following questions for determination:

1. May the taxpayers change their method of accounting from the accrual to the cash receipts and disbursements method when the Commissioner has not allowed their requests for such change?

2. May the Irvines, who have consistently and for many years used the unit livestock price method of valuing their inventory of raised and purchased breeding animals, cease using inventories for their purchased breeding animals when the Commissioner has not given his consent to such change?

3. Did the Commissioner abuse his discretion by refusing to allow taxpayers to make the aforesaid changes?

Stipulations of facts were submitted to the Court.

Plaintiff Mortons Incorporated is engaged in the livestock and ranching business in Wyoming. This business consists principally of the raising and sale of sheep and cattle, crop farming and raising hay and other livestock feed. Since 1932 Mortons has maintained its books and has reported its income from all its business operations on the accrual method of accounting. Inventories were used for all livestock, whether raised or purchased and whether held for sale or for breeding. Its inventories have been valued on the unit-livestock-price method.

On January 12, 1955, Mortons filed a timely application with the Commissioner of Internal Revenue seeking to change its method of accounting for the year 1955 and subsequent years from the accrual method to the cash basis. No immediate action was taken on that request pending the promulgation of regulations under Section 481 of the 1954 Code. Consequently Mortons filed its 1955 return as it had in the past, on the accrual basis, reporting a tax liability of $12,-550.09. On March 10, 1959, it filed claims for refund for income taxes and interest for the year 1955 for the entire $12,-550.09 and also for $19,023.43 for income taxes paid for the year 1953. Mortons predicates its claim for these refunds on the premise that if it had changed to the cash basis of accounting in 1955, it would have realized a $52,034.20 loss, and that such loss should be carried back to 1953.

On August 13, 1959, the government notified Mortons that its request to make a change was denied. Its claims for the refunds were denied on October 14, 1959. Denying the request to change to the cash basis method of accounting the Commissioner stated that the accrual method of accounting clearly reflected taxpayer's income within the meaning of Section 446 of the Internal Revenue Code of 1954 and the regulations thereunder and "that a change from the accrual method to the cash receipts and disbursements method of accounting will result in a distortion of income"

Plaintiffs Van R. Irvine and Herma W. Irvine are husband and wife and will be referred to as the Irvines. These taxpayers have been engaged in the livestock and ranching business in Wyoming since prior to 1943. Their business consists principally of the raising and sale of sheep and cattle, the raising of hay for livestock feed and the maintenance of a string of horses for use in their ranching and livestock business. From 1943 through 1956 the Irvines maintained their records and reported their income for federal income tax purposes on the accrual method of accounting, using inventories for both raised and purchased breeding animals as well as for animals held for sale, and such inventories were valued on the unit-livestock-price method.

On March 16, 1957, the Irvines applied to the Commissioner to change from the accrual method of accounting to the cash basis for the year 1957. In June 1957 taxpayers were notified by the government that no action would be taken on their request pending the promulgation of regulations. They were advised that

their returns should be prepared in accordance with their existing method of accounting.

In 1958, after the decision in the case of Scofield v. Lewis, 5 Cir., 251 F.2d 128 (1958), the Irvines revised their bookkeeping treatment of raised breeding herd animals for 1954 and subsequent years. Pursuant to their revised system of accounting, raised breeding herd animals on hand on December 31, 1953, were transferred to a new breeding herd account at their then inventory value until such animals were disposed of in subsequent years. There was no increase or decrease in their carrying values subsequent to December 31, 1953. Breeding animals raised by the Irvines subsequent to December 31, 1953, were not added to inventories and such animals were assigned a zero basis for income tax purposes. Commencing with the calendar year 1954 purchased breeding herd animals were to be capitalized and depreciated over their useful lives. This was a change from the treatment prior to 1954 when purchased breeding herd animals were included in inventory at cost.

That revised method of computing the Irvines' income was first reflected on a filed income tax return for the taxable year 1957. Their taxable income for the years 1954, 1955 and 1956 was recomputed also using the revised treatment of raised breeding herd animals. Claims for refunds for the years 1954, 1955 and 1956 were duly filed and disallowed by the Commissioner.

The Internal Revenue Service proposed income tax deficiencies for the year 1957 based upon the following adjustments: (a) determination that the revised treatment of raised breeding herd animals for the years 1954 through 1957 was improper; (b) determination that the estimated normal cost of raising 1,003 yearling ewes sold during 1957 should be capitalized in the amount of $3,009.00; and (c) disallowance of depreciation of purchased breeding herd animals. Plaintiffs paid the deficiency assessed for the year 1957 and filed their claim for refund of such deficiency payment. They claimed also an additional refund based upon the contention that the Commissioner should have granted their application to change to the cash basis beginning with the year 1957. These claims were denied. On March 16, 1957, the Irvines filed a timely application with the Commissioner to change their method of accounting for the year 1957 and subsequent years from the accrual method to the cash basis. To date no action has been taken on this application.

■■ Taxpayers did not sustain their burden of proving that the Commissioner abused his discretion in not approving their requests for changes in their methods of accounting. They did not show wherein he acted arbitrarily, capriciously, unreasonably or unlawfully. They failed to make the requisite "clear showing" that the Commissioner abused his discretion. Standard Paving Co. et al. v. Commissioner of Internal Revenue, 10 Cir., 190 F.2d 330 (1951). The prime purpose of the Code and Regulations with respect to methods of accounting is accurately to reflect income and to maintain uniform, consistent and good accounting practices. Taxpayers did not establish that their present method of accounting fails to reflect their income nor that it distorts their income, nor did they prove that the cash basis would more accurately reflect their income. Mortons' admitted purpose in seeking the change was to afford it more available working capital and to enable it to simplify its bookkeeping records.

■ The extent of the Commissioner's discretionary power to determine whether or not to consent to a change in accounting methods is well settled. In Brown v. Helvering, 291 U.S. 193, 54 S. Ct. 356, 361, 78 L.Ed. 725 (1934), the Court stated that the Commissioner is vested with "a wide discretion in deciding whether to permit or to forbid a change [in the method of accounting]". Congress delegated to the Commissioner, and not to the Court nor to the taxpayer, the power to determine whether the method of accounting clearly reflects the income.

Sections 446(b) and 471 of the 1954 Code specify that the "opinion of the Secretary or his delegate" controls; they describe the standard to be the clear determination of income and the best accounting practice in the trade or business. Nothing in the record indicates that the Commissioner's refusal to allow the change was unlawful. Absent such element this Court is not endowed with any authority to interfere with the Commissioner's conclusion. In the exercise of his discretion he is entitled to much latitude. Lucas v. American Code Company, Inc., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538 (1930). This Court holds inviolate the responsibility of the Commissioner to guard against the distortion of income. Commissioner of Internal Revenue v. O. Liquidating Corporation, 3 Cir., 292 F.2d 225 (1961). Mortons failed therefore to prove that it is entitled to recover its deficiency payments.

The Irvines argue that the issue of whether or not they are entitled to change their method of accounting is for this Court to decide. Such is not the role of the Court. "It is not the province of the court to weigh and determine the relative merits of systems of accounting". Brown v. Helvering, supra, 291 U.S. at page 204, 54 S.Ct. at page 361.

None of the taxpayers has successfully changed from the accrual to the cash method of accounting, nor have they the right to do so without the consent of the Commissioner. After the taxpayers elected between the cash and accrual methods of accounting they are bound by their election. So also, after they determined to evaluate their inventory by the unit-livestock-price method they must stand by their own election. Ex parte vacillation will not be countenanced. Consistency and continuity are required of the taxpayers. Treas.Regs. § 1.471–2(b), § 1–61–4(b), § 1.471–6; Sec. 446, Internal Revenue Code of 1954 (26 U.S. C., 1958 Ed. § 446).

The election occurs when the taxpayers file their first returns. Treas. Reg. § 1.446–1(e) (1); Kuhl et al. v. United States, D.C.Wyo., 143 F.Supp. 308 (1956). Mortons, therefore, manifested its election to use the accrual method of accounting and the unit-livestock-price method of evaluation in 1932 and the Irvines in 1943.

The issue of the propriety of one or the other methods of accounting or their relative merits is not for this Court to decide. Brown v. Helvering, supra. In the light of the decided cases I am of the opinion that the taxpayers do not have a right to change from one method to another without the prior authorization of the Commissioner. Kuhl et al. v. United States of America, supra; Visintainer v. Allan, D.C.Colo., 191 F.Supp. 425 (1961), aff'd per curiam, Visintainer v. United States, 10 Cir., 301 F.2d 312 (1962); Keeler v. Commissioner of Internal Revenue, 10 Cir., 180 F.2d 707 (1950); Carter et al. v. Commissioner of Internal Revenue, 5 Cir., 257 F.2d 595 (1958).

The rationale of this well established rule is logically expressed in Pacific National Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 858, 82 L.Ed. 1282 (1938): "Change from one method to the other * * * would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws." The controlling rule in these cases is succinctly stated in Champlin v. Commissioner of Internal Revenue, 10 Cir., 78 F.2d 905, 911 (1935), as follows:

"* * * To permit taxpayers to change their minds ad libitum for fifteen years would throw the department into inextricable confusion. The general rule is that where a taxpayer has exercised an option afforded by statute he cannot retroactively and ex parte rescind his action. * * *"

The effect of the Irvines' removal of their breeding animals from inventory is to deduct the costs from income as an ordinary expense as though on a cash basis. The rest of their operations were not affected by their revised treatment

and remained on the accrual basis. Based on the authorities discussed earlier it is indisputable that the revision amounts to a change of the treatment of a material item and therefore is a change in the method of accounting. This change may not be undertaken without approval of the Commissioner. No approval of such change was requested and none was given. The Irvines, therefore, are not entitled to a refund occasioned by treating the breeding animals on a cash instead of the accrual basis.

Relying on Scofield v. Lewis, 5 Cir., 251 F.2d 128, supra, the Irvines contend that the exclusion of their breeding stock from inventory does not amount to a change in the method of accounting. Their revised treatment of their breeding stock, they argue, does not require the Commissioner's prior approval. The facts of the Irvines' cases and the issues presented are not within the limited confines of the Scofield v. Lewis case. Under the circumstances it is not controlling on the issues raised by the Irvines. In the Scofield v. Lewis case, the taxpayers were engaged in the business of breeding cattle and sheep only. The sole issue, as expressed by the Court, was the determination of the cost basis to be used in computing the capital gain on breeding stock sold. Six months later the Fifth Circuit stated that "the principle of the Lewis case should not be extended beyond its own facts." Carter et al. v. Commissioner of Internal Revenue, 5 Cir., 257 F.2d 595, 600 (1958).

■ There is respectable authority sustaining my position that the requirements of Treasury Regulations, Sec. 1.-471–6(g), must be followed. The taxpayers, having exercised their option to include all their livestock in inventories and to value the inventories on the unit-livestock-price method, are bound by that election until consent of the Commissioner is acquired allowing a change. Little et al. v. Commissioner of Internal Revenue, 9 Cir., 294 F.2d 661 (1961); United States v. Ekberg, 8 Cir., 291 F.2d 913 (1961), cert. den. 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 135.

For the reasons stated herein I hold the taxpayers are not entitled to recover for the difference represented by their change to the cash basis of accounting since this method has not been approved by the Commissioner Furthermore, the Irvines may not recover as they are not entitled retroactively to withdraw their raised and breeding animals from their inventory.

This opinion sufficiently states the Findings of Fact and Conclusions of Law of the Court. Further Findings of Fact and Conclusions of Law are not necessary. Judgment of dismissal will be entered by the Clerk in each of the above cases.