W. H. WARDLAW, independent Executor
of the Estate of C. W. Wardlaw,
Deceased, et al.

v.

UNITED STATES of America.

W. H. WARDLAW and wife, Mattye
Gwen Wardlaw,

v.

UNITED STATES of America.

W. R. WHITEHEAD and wife,
Dora Whitehead,

v.

UNITED STATES of America.

F. H. WHITEHEAD and wife,
Winnie Whitehead,

v.

UNITED STATES of America.

L. D. WHITEHEAD

v.

UNITED STATES of America.

F. J. BARRETT and wife, Alma Barrett,

v.

UNITED STATES of America.

R. W. HODGE and wife, Anale Hodge,

v.

UNITED STATES of America.

B. E. WILSON and wife, Elsie Wilson,

v.

UNITED STATES of America.

Civ. A. Nos. 306, 307, 328–333.

United States District Court
W. D. Texas,
Del Rio Division.

Sept. 30, 1963.

632

Elwood Cluck, Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Tex., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., and Ernest Morgan, U. S. Atty. for Western Dist. of Texas, for the Government.

SPEARS, Chief Judge.

The above entitled actions were brought by Plaintiffs against Defendant for the recovery of income taxes and interest thereon heretofore assessed against and collected from Plaintiffs, respectively, by Defendant. After Defendant answered in each of such causes, all of the issues involved therein with respect to the determination of Plaintiffs' inventory of livestock and the calculation of gain upon the sale of livestock held for breeding purposes were upon motion of Plaintiffs and by order of this Court, severed from the other issues involved in such actions for trial separately by the Court without a jury. Plaintiffs, respectively, and Defendant having made and entered into stipula-

tions of fact, Plaintiffs filed their respective Motions for Summary Judgment with respect to all refund claims of Plaintiffs, respectively, relative to raised animals held for breeding purposes, and with respect to purchased animals held for breeding purposes. Defendant also filed its Motions for Summary Judgment. There being no dispute as to any material fact, and these suits involving common questions of law, the above entitled actions were consolidated for purposes of briefing, argument and trial and came on for trial jointly in the United States District Court for the Western District of Texas, Del Rio Division, sitting in San Antonio, Texas, on the 3rd day of May, 1963, for oral argument and submission, and the Court having considered the Stipulations of Facts entered into between Plaintiffs and Defendant, the briefs submitted by the parties in support of their respective Motions for Summary Judgment, and the arguments of counsel, upon the entire record, now makes the following findings of fact and conclusions of law:

FINDINGS OF FACTS

(1) These suits are for the recovery of income taxes and interest heretofore assessed against and collected from Plaintiffs by Defendant and are brought pursuant to the provisions of Sec. 1346 (a) (1) of Title 28 of the United States Code Act of June 25, 1948, Chapter 646, 62 Stat. 869, at 933 as amended by Act of July 30, 1954, Chapter 648, Sec. 1, 68 Stat. 589.

(2) Each of these cases raises the following questions:

1. With regard to raised breeding animals:

(a) Whether that portion of Regulation 1.471–6(f) which requires the inclusion of raised livestock held and used by Plaintiffs for breeding purposes in their inventory of livestock and the valuation thereof under the unit-livestock-price method is in conflict with or restrictive of the provisions of Section 1231 of the Inter-

nal Revenue Code, and therefore invalid.

(b) Whether the Plaintiffs are required to obtain the Commissioner's consent, in accordance with Section 446(e) of the Internal Revenue Code, to remove from inventory breeding animals which under Sec. 1231 of the Internal Revenue Code qualify as property used in trade or business and which were required by Regulation 1.471–6(f) to be included in inventory in the first place.

(c) Whether the cost basis to be used in computing capital gain on the sale of raised breeding animals sold is zero.

2. With regard to purchased breeding animals:

(a) Whether animals purchased for draft or breeding purposes after animals previously purchased had been included in inventory, may be treated as capital assets subject to depreciation after maturity during the years in question.

(b) Whether the cost basis to be used in computing the capital gain on the sale of purchased breeding livestock sold is the cost thereof less depreciation.

(3) All the material facts herein have been stipulated and the Stipulation of Facts entered into between Plaintiffs, respectively, and Defendant are hereby found as stipulated and incorporated herein.

(4) Plaintiffs have been engaged in the business of ranching in the capacities and from the times set opposite their names below and were so engaged during the years here involved, also set opposite their names below:

| Civil Action No. | Plaintiffs | Capacity | Dates of Commencement of Ranching Business | Years Involved |
|---|---|---|---|---|
| 306 | C. W. WARDLAW, now deceased, (W. H. Wardlaw, Executor) | | | |
| 307 | and W. H. WARDLAW | Partnership | 1935 | 1955–1959 |
| 328 | W. R. WHITEHEAD | Sole Proprietorship | 1927 | 1957–1959 |
| 329 | F. H. WHITEHEAD | Sole Proprietorship | 1927 | 1957–1959 |
| 330 | L. D. WHITEHEAD | Sole Proprietorship | 1927 | 1957–1959 |
| 331 | F. J. BARRETT | Sole Proprietorship | 1917 | 1958–1959 |
| 332 | W. R. HODGE | Sole Proprietorship | 1941 | 1958–1959 |
| 333 | B. E. WILSON | Sole Proprietorship and Partnership | Prior to 1913 1948 | 1958–1959 1958–1959 |

(5) The ranching businesses conducted by Plaintiffs since the time of commencement thereof and during the years here involved, as above stated, consisted

of breeding and raising sheep, goats and cattle principally for the production of wool, mohair, mutton and calves. Plaintiffs maintained breeding herds of sheep, goats and cattle for use in connection with their ranching businesses. As circumstances required, Plaintiffs purchased bucks, ewes, billies, nannies, bulls and cows for addition to their breeding herd to increase their herds, improve the quality and prevent inbreeding. Also, as circumstances required, Plaintiffs selected certain lambs, kids and cows produced from the breeding herd and added same to the breeding herd. The number of animals to be retained in the breeding herds was determined on the basis of range conditions, rainfall, cost of operation and other factors. When required by age, disease, or other circumstances, Plaintiffs culled from their breeding herd certain animals which were held for breeding purposes but which were unfit for breeding stock or which for some other reason could not be retained and same were sold. Lambs, kids and calves produced by the breeding herd and not added to the breeding herd, as well as wool and mohair produced by the breeding herd were sold in due course of business. Plaintiffs also maintained a herd of stallions, mares and saddle horses which were used in conducting their ranching business.

(6) Each of Plaintiffs had the right to select his method of accounting *when he commenced business*, and each Plaintiff did select the accrual inventory method of accounting at that time. However, such selection as to raised animals was not a meaningful free choice, or, as the Defendant puts it, not an "enlightened free choice", because the selection was made prior to the time that it had become clear, under applicable statutes, regulations and litigated cases, that the selection of one method of accounting would produce capital gains on the appreciation in value of raised breeding animals and the selection of another method would produce ordinary income. The first possible time that

Plaintiffs could have had full and complete knowledge of their right to make a choice as to accounting methods would have been for the taxable year 1957, which was after the decision in Scofield v. Lewis, 251 F.2d 128 (5 Cir. 1958) was rendered on January 20, 1958, and they have made their election as to 1957, and all subsequent years, within the time allowed them by the three year statute of limitations in the tax laws.

(7) In 1942, Section 117(j), which provided for capital gains treatment for "property used in the trade or business", was added to the Internal Revenue Code of 1939 by Section 151(b) of the Revenue Act of 1942. There was nothing in the Internal Revenue Code of 1939 as originally enacted, nor in any prior Revenue Act, relating to property used in the trade or business, corresponding to Section 117(j). In 1951, Section 117(j) of the Internal Revenue Code of 1939 was amended by Section 324 of the Revenue Act of 1951 to provide specifically that the term "property used in the trade or business * * * includes livestock, regardless of age, held by the tax payer for draft, breeding, or dairy purposes * * *". Thereafter, Section 117(j) of the Internal Revenue Code, as amended by the Revenue Act of 1951, was re-enacted, without any consequential change, as Section 1231 of the Internal Revenue Code of 1954, the language of which is clear and unequivocal and the intent of which is plain.

(8) From the time they commenced business, as above stated, until 1944, Plaintiffs each valued their livestock inventories under the "constant unit-price" method. In December, 1944, Regulation 111, Sec. 29.22(c)–6 was amended by TD 5423, 1945 CB 70, to provide that:

"A livestock raiser who had for taxable years beginning prior to January 1, 1944, adopted a constant unit-price method of valuing livestock inventories and filed returns on that basis will be considered as having elected the 'unit-livestock-price method'."

Therefore, Plaintiffs were in 1944 required by the Commissioner's Regulation to follow the "unit-livestock-price method" of valuing inventories.[1]

(9) T.D. 5423, supra, further amended Regulation 111, Sec. 29.22(c)–6, to provide that:

"A taxpayer who elects to use the 'unit-livestock-price method' must apply it to all livestock raised, whether for sale or for breeding, draft or dairy purposes."

Therefore, Plaintiffs, in 1944, were also required by the Commissioner's Regulation to include their raised breeding animals in their livestock inventories along with animals raised and held for sale on the market.

(10) During the years here involved each of the Plaintiffs, except Plaintiffs B. E. Wilson, R. W. Hodge and F. J. Barrett, as required by the Commissioner's Regulations, included their raised breeding animals in their inventory along with animals raised and held for sale on the market and valued such raised breeding animals under the unit-livestock-price method pursuant to and in accordance with the Regulations. Plaintiffs B. E. Wilson, R. W. Hodge and F. J. Barrett did not include their raised breeding animals in their inventories in the years 1957, 1958 and 1959[2].

(11) As a result of the foregoing requirements of the Regulations that these Plaintiffs use the unit-livestock-price method and include raised breeding animals in inventory, the initial inventory value of raised breeding animals put in inventory was taxed as ordinary income, and all annual increases thereafter in the inventory value of such raised breeding animals were also taxed as ordinary income.

(12) Although Treasury Regulation 1.471–6(g), and its predecessors, did not require the taxpayers to do so, they voluntarily elected to include their purchased breeding animals in inventory, rather than capitalize them, for each year beginning with the inception of their businesses up to 1957, and the Commissioner of Internal Revenue has not consented for taxpayers to treat such purchased breeding animals as a capital asset in the years 1957, 1958 and 1959.

(13) In each of the years here involved, as well as in the previous years, Plaintiffs culled and sold from their breeding herd some of their breeding animals (including both raised and purchased animals) which had been held and used by them from breeding purposes for more than twelve months before the date of such sales, but which were unfit for breeding purposes or which for other reasons were not suitable or desirable for retention in their breeding herds. Plaintiffs reported the gain on the sale of raised breeding animals as gain on the sale of capital assets and calculated such gain by using the accrued unit inventory value assigned to such animals as the basis. Also, in connection with their purchased breeding animals, Plaintiffs reported their gains on the sale of purchased breeding animals as gain on the sale of capital assets, and calculated such gain by using the cost thereof, less the depreciation claimed, as the basis for such animals sold.

(14) Plaintiffs' Federal income tax returns for each of the years here involved, which were timely filed and which reflected the foregoing, were audited by the Commissioner of Internal Revenue. In connection with such audit, Plaintiffs claimed in their protest filed with the Commissioner that Plaintiffs had erroneously included their raised breeding animals in inventory and had erroneously calculated gain on the sale of such raised

1. Regulation 111, Sec. 29.22(c)–6, as amended by TD 5423, was succeeded by Regulation 118, Sec. 39.22(c)–6 and Regulation 1.471–6, which contained the same language set forth in the original Treasury Decision amending the Reg-ulation with the exception of minor changes of detail.

2. Upon audit of their income tax returns, the Commissioner of Internal Revenue required these Plaintiffs to include the raised breeding animals in their livestock inventory in each of such years.

breeding animals by using the accrued inventory value as the basis. Plaintiffs claimed that they were not required to include raised breeding animals in inventory and that they were not required to use the inventory value as the basis in computing gain on the sale of raised breeding animals, but should, instead, use a basis of zero in calculating the gain on the sale of raised breeding animals. Plaintiffs' claims in this regard were based on the decision of the United States Court of Appeals, Fifth Circuit, in the case of Scofield v. Lewis, 251 F.2d 128 (1958) which declared that the Commissioner's Regulations requiring taxpayers to include raised breeding animals in inventory were invalid. These claims were denied by the Commissioner. In addition, the Commissioner denied and disallowed the deduction claimed by Plaintiffs for depreciation with respect to purchased breeding animals. Furthermore, the Commissioner required Plaintiffs to include the breeding animals purchased in each of the years here involved in Plaintiffs' livestock inventories without any allowance for depreciation, exhaustion, wear and tear, and required Plaintiffs to use the inventory value (i. e., cost, without any allowance for depreciation) of purchased breeding animals as the basis for the calculation of gain upon the sale thereof.

(15) After paying the difference in tax claimed by the Commissioner, Plaintiffs filed timely claims for refund, based on removing raised breeding animals from closing inventory and capitalizing breeding animals purchased in 1957, 1958 and 1959, and reporting the gain on all breeding animals sold during the years in question as capital gains, using zero as the basis for raised breeding animals and using the depreciated cost as the basis for purchased breeding animals. In the computation of their claims for refund Plaintiffs also determined a reasonable allowance for depreciation on breeding animals purchased in 1957, 1958 and 1959 and deducted such in determining the amount of the refund. These claims for refund were rejected, and these suits were filed in the United States District Court, Western District of Texas.

(16) In their claims for refund, in these suits, and in their motions for summary judgment, Plaintiffs claim, as to raised breeding animals, that the portion of Regulation 1.471–6, and its predecessors, by which Plaintiffs were required to include raised livestock held for breeding purposes in inventory, was and is invalid because it is in conflict with Section 1231 of the Internal Revenue Code which provides that livestock held for draft or breeding purposes constitute "property used in the trade or business" and that gains on the sale of "property used in the trade or business" shall be considered as gains from the sale of capital assets; since the raised breeding animals were erroneously required to be included in inventory pursuant to the Regulation, Plaintiffs are entitled to remove such raised breeding animals from their closing inventory; and, properly computed, capital gain on the sale of raised livestock held for breeding purposes is the excess of proceeds from the sale over zero. As to purchased breeding animals, Plaintiffs claim that, since they did not elect to include breeding animals purchased in 1957, 1958 and 1959 in inventory, as permitted, but not required by Regulation 1.471–6(f), they are entitled to a reasonable allowance for depreciation with respect to breeding animals purchased in 1957, 1958 and 1959 because such animals constitute property used in the trade or business, and are of a character subject to the allowance for depreciation provided in Section 167 of the Internal Revenue Code.

(17) It is found as a fact that when Section 117(j) of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1939, was re-enacted as Section 1231 of the Internal Revenue Code of 1954, Congress had no general or specific knowledge of the portion of the regulations in question requiring that taxpayers who used the unit-livestock-price method must include their raised breed-

ing animals in inventory along with raised animals held for sale in the ordinary course of business.

(18) In view of the length and complexity of the Code itself, and the extreme length and complexity of the Regulations, it would be unreasonable to conclude that Congress had even a general knowledge of the full import of the Regulations. The letter of June 27, 1952, from the Secretary of the Treasury to the Chairman of the Senate Finance Committee, which the Defendant describes as apprising Congress in most thorough and clear terms of the existing law as understood and administered regarding livestock held for breeding purposes, fails to mention or make reference to the fact that the Commissioner, by his Regulations, required taxpayers who used the unit-livestock-price method to include their raised breeding animals in inventory along with raised animals held for sale in the ordinary course of business. This letter did not constitute notice to Congress of the regulation in question.

(19) The Commissioner of Internal Revenue did not consider requests filed by ranchers to change their method of accounting for Federal income tax purposes from the accrual-inventory method to the cash receipts and disbursements method until the final regulations under Section 481 of the Internal Revenue Code of 1954 were issued, same having been issued on February 19, 1959.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction of these actions pursuant to the provisions of Section 1346(a) (1) of Title 28 United States Code, Act of July 25, 1948, C. 646, 62 Stat. 869 at 933 as amended by Act of July 30, 1954, C. 648, Sec. 1, 68 Stat. 589.

■ (2) Regulation 1.471–6(f) and specifically the portion thereof requiring the inclusion of breeding herd animals in a ranchman's inventory, is violative of, and is in conflict with, Section 1231 of the Internal Revenue Code and is, therefore, invalid; consequently, the Plain-

tiffs should not have been compelled to include their raised breeding herd animals in inventory. Scofield v. Lewis, 251 F.2d 128 (5 Cir. 1958) affirming the decision of the United States District Court, Western District of Texas, 57–1 USTC, Paragraph 9251.

■ (3) Section 446(e) of the Internal Revenue Code, and the Regulations applicable thereto, requiring the consent of the Commissioner of Internal Revenue to any change in Accounting method have no application to a situation where a taxpayer, within the three year statute of limitations after being charged with full knowledge of his right to correct the error in his inventory practices resulting from the invalid regulation referred to in the preceding paragraph, seeks to remove from inventory raised breeding animals which, under the statute, qualify as property used in the trade or business, and which were improperly required by such invalid regulation to be included in inventory in the first place. Inasmuch as this removal does not involve a change of accounting method, neither the approval nor the consent of the Commissioner is required. In this situation, methods of accounting are not determinative of the tax liability, and for this reason neither approval nor consent of the Commissioner is required. See Scofield v. Lewis, supra, 251 F.2d at page 132.

■ (4) Section 1231 of the Internal Revenue Code clearly and unequivocally states that livestock held for breeding purposes is property used in the trade or business of the taxpayer. As to such livestock, the taxpayers were not required to include them in an inventory, or to use a unit-livestock-price method to determine the cost basis of animals sold. Scofield v. Lewis, supra, 251 F.2d at page 132.

■ (5) The so-called rule that re-enactment of a statute gives the force of law to a prior regulation interpreting the statute is not applicable in this case (a) because it has been found as a fact that Congress had no general or specific knowledge of the portion of the regula-

tions in question [1], (b) because the portion of the regulations in question was not in fact a construction or interpretation of the statute but was an invalid provision in conflict with the statute, and (c) because the statute in question is clear and unequivocal and therefore the rule of re-enactment is not pertinent [2].

(6) Plaintiffs are entitled to remove from closing inventory, for each of the years involved, all raised breeding animals. As to raised breeding animals sold during the years in question, Plaintiffs shall compute capital gain on a basis of zero rather than inventory values.

(7) Plaintiffs' selection of the accrual (inventory) method of accounting and the unit-livestock-price method of valuing inventory when they commenced operating their ranches was not a meaningful choice, as the statute then did not authorize capital gains treatment on livestock used for draft, dairy or breeding purposes. It was not until 1951 that Congress authorized capital gains treatment on livestock by amending Section 117(j) of the 1939 Code, and it was not until January 20, 1958, that the Court of Appeals for the Fifth Circuit decided the case of Scofield v. Lewis, supra. Thus, in any event, the first time that Plaintiffs could have had the kind of full and complete knowledge necessary to an enlightened and meaningful free choice as to their right to correct the error in their inventory practices resulting from the invalid regulation referred to in paragraph (2) of these conclusions of law, would have been with respect to the taxable year 1957. Plaintiffs, since filing their 1957 tax returns have validly made their election as to 1957, and it was timely accomplished within the period allowed them by the three year statute of limitations in the tax laws.

(8) Since Plaintiffs B. E. Wilson, R. W. Hodge and F. J. Barrett did not include their raised breeding animals in their inventories in the years 1957, 1958 and 1959, they clearly made a valid election with respect to the taxable year 1957, as to the accounting method they desired to use, and any subsequent change therein would have required the consent of the Commissioner.

(9) The holding of the Court of Appeals for the Fifth Circuit in Scofield v. Lewis, supra, that the Treasury Regulation in question is invalid as to raised breeding animals, is controlling as to the raised breeding animals involved in this case.

(10) Having for each year, from the inception of their businesses up to 1957, voluntarily elected to include purchased breeding animals in inventory, without having been required by the Treasury Regulations to do so, the taxpayers are bound by that election for 1957, 1958 and 1959, as well as for future years, with respect to all purchased breeding animals, unless they obtain the Commissioner's consent to change. Revenue Ruling 60–60, 1960–1, Cum.Bull. 190; Cf. Carter v. Commissioner, 257 F. 2d 595 (5 Cir. 1958).

(11) Plaintiffs' Motions for Summary Judgment with respect to raised animals held for breeding purposes should be granted, but insofar as they relate to purchased animals held for breeding purposes they should be denied.

(12) Defendant's Motions for Partial Summary Judgment with respect to raised animals held for breeding purposes should be denied, but insofar as they relate to purchased animals held for breeding purposes they should be granted.

(13) Judgment will be entered in accordance with these findings of fact and conclusions of law.

---

1. See Mertens Law of Federal Income Taxation, Vol. 1, Sec. 3.24, Pages 49 and 51.

2. See Mertens, supra, at Page 48, where it is stated that "The doctrine (of statutory re-enactment) has no application where the law itself is plain and needs no administrative construction * * *".