**UNITED STATES of America, Appellant,**

v.

**John CATTO, Jr., and Roxana Catto, his wife, Appellees.**

**No. 21351.**

United States Court of Appeals
Fifth Circuit.

April 8, 1965.

Robert J. Golten, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty., San Antonio, Tex., Melva M. Graney, Atty., Dept. of Justice, Washington, D. C., Harry Lee Hudspeth, Asst. U. S. Atty., of counsel, for appellant.

Gordon G. Hawn, Ralph G. Langley, San Antonio, Tex., Foster, Lewis, Langley, Gardner & Hawn, San Antonio, Tex., for appellees.

Before GEWIN and BELL, Circuit Judges, and McRAE, District Judge.

PER CURIAM.

This appeal raises once again the problem of the tax and accounting treatment to be accorded raised breeding cattle which are sold by an accrual basis taxpayer.[1] The appellees, who are owners and operators of two cattle ranches in West Texas, keep their books on the accrual basis and file their tax returns accordingly.

Taxpayers, in conformity with Treasury regulations,[2] have chosen to value their inventory by the unit-livestock-price method. If this method is used, standard unit values are assigned to different classes of animals within the herd, representing estimated rather than actual expenses of raising each animal, and standard increments are added to closing inventory each year. Under Treas.Reg. 1.471–6(f), a taxpayer who elects to use the unit-livestock-price method of valuing his inventory must apply it to all of his *raised* livestock, whether they are held for sale or for breeding purposes. Hence, an accrual taxpayer who employs the unit-livestock-price method must include his raised breeding cattle in inventory along with his cattle held for sale, although the breeding cattle may be taxed at capital gains rates upon sale.[3]

Prior to and during the taxable years in question, the taxpayers complied with Treas.Reg. 1.471–6(f). They removed the raised breeding cattle which they sold from opening and closing inventory for the year of sale and paid a capital gains tax on the sales, using the inventory value under the unit-livestock-price method as the basis for computing the gain on the sale of each animal.

Taxpayers then instituted this suit for refund in the district court, contending, on the basis of our decision in Scofield v. Lewis, (5 Cir. 1958) 251 F.2d 128, that Treas.Reg. 1.471–6(f) is invalid and that they may therefore correct the erroneous inclusion of raised breeding cattle in inventory by removing all such cattle from closing inventory. This procedure, in effect, affords them a deduction of the estimated raising costs against ordinary income, but they must compute the gain on the sale of these cattle on a zero basis. The net effect of this transaction is to substitute a deduction against ordinary

---

1. The identical issue is raised in United States v. Wardlaw, 5 Cir., 344 F.2d 225, decided this day.

2. Treas.Reg. 1.471–6(c).

3. 26 U.S.C.A. § 1231(b) (3).

income for a deduction against capital gains. The district court, following Lewis, ruled in favor of the taxpayers.

The Government challenges the propriety of applying the Lewis rationale, urging that the requirement that raised breeding cattle be inventoried is merely a convenient means of capitalizing the cost of such cattle until the time of sale and, as such, is a valid exercise of the Commissioner's power to prescribe accounting methods which accurately reflect income. The taxpayers, on the other hand, note the discriminatory effect of this requirement on accrual taxpayers, since the Treasury has long indulged similar cash basis taxpayers by allowing them to write off the raising costs of breeding cattle against ordinary income and compute their capital gain on the sale of such cattle on a zero basis. They argue that Lewis was correct in holding that Treas.Reg. 1.471–6(f) is inconsistent with section 1231(b) (3), which accords all breeding cattle capital gains treatment. While we are fully cognizant of the anomaly of allowing such tax treatment of a capital asset and appreciate the appealing conceptual arguments of the Government, we regard Lewis as controlling until its legislative or judicial demise.[4]

Since Lewis governs on the issue of the invalidity of Treas.Reg. 1.471–6(f), we think the taxpayers are justified in correcting the error which the regulation imposed by the procedure which they suggest, even though it results in an inordinate deduction against ordinary income in the year in which the correction is made. Moreover, we do not deem this a change in accounting method which necessitates the consent of the Commissioner, particularly in view of the consistent refusal of the Commissioner, during the years in question, to entertain applications by accrual basis cattle ranchers to change to the cash method of accounting for tax purposes.[5]

Accordingly, the judgment is affirmed.

4. We are also aware of the fact that the two Circuits that have examined the problem since the Scofield decision have refused to follow it, see Little v. Commissioner (9 Cir. 1961) 294 F.2d 661; United States v. Ekberg (8 Cir. 1961) 291 F.2d 913, cert. denied, 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 135, and that this Court has severely limited its applicability, see Carter v. Commissioner (5 Cir. 1958) 257 F.2d 595, which relates to purchased breeding animals inventoried on the farm-price method.

5. It was stipulated that during the years 1954–1958, the Commissioner refused to consider ranchers' requests to change from accrual accounting methods to the cash receipts and disbursements method. A similar situation obtained during the years 1946–1949, as indicated by Scofield v. Lewis, 251 F.2d at 131. The taxpayer, therefore, feels he cannot escape from the "box" in which his election has placed him.