344 F.2d 225
 65-1 USTC P 9339
 UNITED STATES of America, Appellant,
v.
W. H. WARDLAW, Independent Executor of the Estate of C. H.
Wardlaw, Deceased,et al., Appellees.
W. H. WARDLAW, Independent Executor of the Estate of C. H.
Wardlaw, Deceased,et al., Appellants,
v.
UNITED STATES of America, Appellee.
 No. 21607.
 United States Court of Appeals Fifth Circuit.
 April 8, 1965.
 
 Robert J. Golton, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D.C., Ernest Morgan, U.S. Atty., William O. Murray, Jr., Asst. U.S. Atty., San Antonio, Tex., Melva M. Graney, Atty., Dept. of Justice, Washington, D.C., Ted Butler, Asst. U.S. Atty., for the United States.
 Claiborne B. Gregory, Elwood Cluck, San Antonio, Tex., Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Tex., of counsel, for appellees-cross-appellants.
 Before MARIS,* RIVES and BROWN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal and cross appeal presents Taxpayer's and the Government's dissatisfaction with the trial Court's disposition of the tax refund suit. We affirm.
 
 
 2
 At issue is the proper income tax treatment of raised breeding animals and purchased breeding animals owned by an accrual basis Taxpayer-Rancher.
 
 
 3
 The Government's appeal concerns raised breeding animals.[1] The District Court followed our opinion in Scofield v. Lewis, 1958, 5 Cir., 251 F.2d 128, which ehld that Treasury Regulation 1.471-6(f) was invalid. Despite the doubts generated by express rejection of Lewis by the 8th and 9th Circuits,[2] a somewhat restricted reading of it by us in Carter v. Commissioner, 5 Cir., 1958, 257 F.2d 595, and the impressive conceptual arguments perhaps not fully advanced earlier, we recognize that Lewis is directly in point and is, and must be, controlling until the principle is judicially reversed or legislatively repealed.[3]
 
 
 4
 The Taxpayer's appeal concerns purchased breeding animals. Accrual basis livestock farmers under Treas.Reg. 1.471-6(g) (1954 Code) are given an option to include in inventory their purchased breeding animals, or to treat them as capital assets subject to depreciation. Taxpayer here, prior to 1957, had been including purchased animals in inventory, but, without the Commissioner's consent, elected in the years 1957, 1958, and 1959 to exclude purcvhased animals from inventory so as to (a) depreciate their cost basis and (b) upon sale report capital gain against depreciated cost rather than inventory value. The District Court sustained the Commissioner's refusal to permit this.
 
 
 5
 The difference between Taxpayer and the Government is a narrow one. Taxpayers recognize that the option has to be exercised and that once exercised as to a particular animal, that animal cannot be changed from inventory to depreciable asset, or vice versa. The Government urges that it is the practice with respect to the herd. We agree.
 
 
 6
 The Regulations, 1.61-4(b)[4] require a consistency from year to year and as such represent a valid exercise of the Commissioner's power to prescribe reasonable accounting methods. Cf. Carter v. Commissioner, 5 Cir., 1958, 257 F.2d 595. We are not impressed with Taxpayer's argument that it was 1960 before it was learned for the first time that only one election is afforded. The Regulation is plain and administratively reasonable. 'There is no evidence that Ruling 60-60 departed from any prior construction of the applicable statutes and regulations.' Tee Bar Ranch Co. v. United States, D.Mont., 1963, 63-2 USTC #9663, at 89,681 and authority there collected.
 
 
 7
 Affirmed.
 
 
 
 *
 Of the Third Circuit, sitting by designation
 
 
 [1]
 The issue is now pending before another panel of this Court in United States v. Catto, 1965, 344 F.2d 227
 
 
 [2]
 United States v. Ekberg, 8 Cir., 1963, 291 F.2d 913; Banks v. Commissioner, 8 Cir., 1963, 322 F.2d 530, 546-547; Little v. Commissioner, 9 Cir., 1963, 294 F.2d 661; see also Irvine v. United States, D.C.Wyo., 1963, 212 F.Supp. 937
 
 
 [3]
 Congress, at least since 1952, has been aware of many of these problems. See letter of June 27, 1952, from Secretary of the Treasury to Senator George, Chairman of the Senate Finance Committee, 98 Cong.Record, part 6, pp. 8307-8308. One complicating factor is the practice, recognized by formal regulations by which both accrual and cash basis taxpayers may deduct the cost of feeding, raising and maintaining animals as ordinary and necessary business expense rather than treating them as capital expenditure for the 'acquisition' of a capital asset, i.e., a mature animal. Treasury Regulation 1.162-12. This regulation, with only slight terminology changes, goes back to 1921. See, e.g., Regulation 45, Art. 110, for the year 1921; Reg. 101, Art. 23(a)-11, for the year 1936
 
 
 [4]
 1.61-4(b). 'A farmer using accrual method of accounting must use inventories to determine his gross income. * * *.' Livestock acquired for draft, breeding, or dairy purposes and not for sale may be included in the inventory * * * instead of being treated as capital assets subject to depreciation, provided such practice is followed consistently from year to year by the taxpayer. * * *'