John CATTO, Jr. and Roxana Catto,
his wife,

v.

UNITED STATES of America.

Civ. A. No. 3060.

United States District Court
W. D. Texas,
San Antonio Division.

Sept. 30, 1963.

Gordon G. Hawn and Ralph G. Langley, Foster, Lewis, Langley & Onion, San Antonio, Tex., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., and Ernest Morgan, U. S. Atty. for Western Dist. of Texas, for the Government.

SPEARS, Chief Judge.

The above-entitled action was brought by Plaintiffs against Defendant for the recovery of income taxes and interest thereon heretofore assessed against and collected from Plaintiffs by Defendant. After the Defendant answered, the Plaintiffs and Defendant made and entered into stipulations of fact. There being no dispute as to any material fact, and the suit involving a question of law, the case came on for trial on the 3rd day of May, 1963, for oral argument and submission to the Court. The Court having considered the Stipulations of Facts entered into between the Plaintiffs and Defendant, the briefs submitted to the Court by the parties, and the arguments of counsel, upon the entire record, now makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

(1) All the material facts herein have been stipulated and the Stipulations of Facts entered into between Plaintiffs and Defendant are hereby found as stipulated and are incorporated herein.

(2) This action is for the recovery of income taxes and interest heretofore assessed against and collected from Plaintiffs by Defendant and is brought under Title 28, U.S.C., Section 1346(a) (1) as amended and under the Internal Revenue Code of 1954.

(3) Plaintiffs are husband and wife and at all times material hereto were residents of Bexar County, City of San Antonio, State of Texas.

(4) During the years 1954 and 1955 (the years involved in this proceeding) and for many years prior thereto, Plaintiffs were engaged in the ranching business. In connection therewith Plaintiffs owned and operated two ranches in West Texas. One ranch, which is located in Brewster County, is known as the Marathon Ranch and consists of approximately 173,000 acres. The other ranch, which is located in Presidio County, is known as the Marfa Ranch and consists of approximately 20,000 acres.[1]

(5) The ranching business conducted by Plaintiffs consisted of breeding and raising cattle for the production and

---

1. These ranches were originally owned by Plaintiff-Roxana Catto's father and mother, Mr. and Mrs. A. S. Gage. In 1924 Mrs. Gage died and devised her community one-half interest in the community estate in trust for the benefit of her two daughters (Plaintiff-Roxana Catto and her sister) with her husband as trustee. Thereafter the ranches were operated as an informal partnership by Mr. Gage in his capacity as trustee for his two daughters under Mrs. Gage's will and in his individual capacity. In 1928 Mr. Gage died. Under his will his interest in the ranches was devised, in trusts for ten years for the benefit of his two daughters (Plaintiff-Roxana Catto and

her sister). The trustees operated the ranches as a partnership until 1938 when the trusts and partnership were terminated. Thereafter, Plaintiff-Roxana Catto, her sister and their respective husbands operated the ranches as a partnership. On December 31, 1948, the partnership operations at the Marathon Ranch were terminated and equally divided tween the daughters, and thereafter, each daughter owned and operated a separate ranch at Marathon. On December 31, 1951, the partnership operations at the Marfa Ranch were terminated and equally divided between the two daughters who thereafter operated their respective portions separately.

sale of calves. Customarily the animals sold by the Plaintiffs are sent to the Midwest by purchasers for fattening and ultimate sale for beef or slaughter purposes. In connection with the ranching business Plaintiffs maintained a breeding herd of Hereford cattle. As circumstances required, Plaintiffs purchased bulls and cows for addition to their breeding herd, to increase the herd, improve the quality and prevent inbreeding. Also, as circumstances required, the Plaintiffs selected certain calves produced from the breeding herd and added the same thereto. The number of animals to be retained in the breeding herd was determined on the basis of range conditions, rainfall, costs of operation and other factors. When required by age, disease and other circumstances, the Plaintiffs culled from the breeding herd and sold animals which were unfit for breeding stock or which for some other reason could not be retained. Calves produced by the breeding herd and not added to the breeding herd were sold in the due course of business.

(6) For each of the years here involved, Plaintiffs kept their books and records and filed their federal income tax returns on the accrual (inventory) and calendar year basis, and used the unit-livestock-price method of valuing inventory. Plaintiffs, either as members of a partnership operating the ranches or as sole proprietors, have been using the accrual (inventory) method for keeping their books and records and valuing inventory under the unit-live-stock-price method since 1938.[2]

(7) Under Treasury Regulation 1.471.6(f), (and its predecessors), a taxpayer valuing inventory under the unit-livestock-price method is required to include raised breeding animals as well as animals held for sale in the ordinary course of business in inventory at a unit value. Under said Treasury Regulation (and its predecessors) as such animals advance in age the taxpayer is required to increase the unit values thereof.[3]

(8) For each of the years here involved, as well as for each of the years prior thereto, Plaintiffs, as required by the Treasury Regulations, included their raised breeding animals in their inventory along with animals raised and held for sale in the ordinary course of business and valued such raised breeding animals under the unit-livestock-price method in accordance with the Treasury Regulations.

(9) For each of the years here involved as well as for each of the years prior thereto, the inclusion of raised breeding animals in Plaintiffs' livestock

2. This method was first adopted by Plaintiff-Roxana Catto's father and mother in approximately 1920 and was continued by, the various partnerships which operated the ranches until 1938. When Plaintiff-Roxana Catto, her sister and their respective husbands commenced operating the ranches as a partnership they continued to use this method; and when the partnership operations were terminated and the Plaintiffs began operating their part of the ranches as a sole proprietorship at the end of 1948 and 1951 they continued to use this method.

3. The kinds, classifications, categories and unit values assigned to raised breeding herd animals during the years 1954 and 1955 and prior thereto were as follows:

| NON-REGISTERED | | REGISTERED | |
|---|---|---|---|
| Heifer yearlings | $25.00 | Calves | $30.00 |
| Cows, two-year-old | 30.00 | Heifer yearlings | 75.00 |
| Cows, three-year-old | 35.00 | Cows | 100.00 |
| Bulls | 100.00 | Bulls | 100.00 |

The partnership between Plaintiff-Roxana Catto, her sister and their respective husbands began using these particular unit values on January 1, 1942, and continued to use them throughout the duration of the partnership. When Plaintiffs commenced operating the ranches as a sole proprietorship they used the same unit values.

inventory as required by the Treasury Regulations, and the valuation thereof under the unit-livestock-price method as provided in the Treasury Regulations, resulted in increasing Plaintiffs' ordinary income for each of such years in an amount equal to the unit value assigned to each new raised breeding animal included in inventory for the first time, plus an amount equal to the annual increase in unit value for the raised breeding animals previously included in inventory.[4] If Plaintiffs were subject to ordinary income tax in that year, it resulted in increasing the ordinary income tax paid by them. On the other hand, in the year such animals were sold the amount of profit from the sale that was entitled to capital gain treatment was reduced because Plaintiffs were required to deduct, as the cost basis, the accrued inventory value from the sales price in order to compute the amount of profit to which the capital gain rate would apply.

(10) During the years involved herein, and prior and subsequent thereto up to and including the present time, the Commissioner of Internal Revenue did not, and does not, require ranchers who maintain breeding herds and file their Federal tax returns on the cash receipts and disbursements basis, to include raised breeding herd animals in inventory.

(11) In each of the years here involved, as well as in the previous years, Plaintiffs culled and sold from their breeding herd, animals (including raised animals) which had been held and used by them for breeding purposes and had been held by them for more than twelve months before the date of such sales but which were unfit for breeding purposes or which for other reasons were not suitable or desirable for retention in their breeding herds.

(12) In filing their Federal income tax returns for each of the years here in-volved, the Plaintiffs, in determining the amount of gain from the sale of raised animals which had been held and used by them for breeding purposes and had been held by them for more than twelve months before the date of such sales, used the accrued unit inventory value assigned to such animals as the basis. In filing said returns, Plaintiffs, also in accordance with the applicable Treasury Regulations, included new raised breeding herd animals in inventory at a unit value and increased the unit value of raised breeding herd animals in inventory.

(13) The Commissioner of Internal Revenue caused Plaintiffs' Federal income tax returns for the years here involved to be examined and determined that there was a deficiency in income taxes due from Plaintiffs; said deficiency was attributable to adjustments presently not in controversy in this proceeding. On October 17, 1960, Plaintiffs paid to the District Director of Internal Revenue at Austin, Texas, the said deficiency plus statutory interest thereon.

(14) Thereafter, Plaintiffs duly filed claims for refund in due and proper form with the District Director of Internal Revenue at Austin, Texas, for the recovery of income taxes overpaid for the years involved herein. Said claim was neither rejected nor paid and after the expiration of six months Plaintiffs filed the complaint in this proceeding.

(15) During the years involved herein Plaintiffs did not file a request to change from the accrual (inventory) method of accounting to the cash receipts and disbursement method with the Commissioner of Internal Revenue. During such years the Commissioner would not consider a request of a rancher or farmer to change from the accrual (inventory) method of accounting to the cash receipts and disbursements.

---

4. Under this method the Plaintiffs would include in inventory the yearling heifer at $25.00. This would mean an increase in ordinary income of $25.00. As to the same animal, in the following year the value would be increased to $30.00. This increment created a like amount of ordinary income to the extent of $5.00.

(16) In their claims for refund and in this proceeding Plaintiffs claim:

1. That Treasury Regulation Section 1.471-6(f), and its predecessor, requiring Plaintiffs to include raised breeding herd animals in inventory, are contradictory to Section 1231 of the Internal Revenue Code of 1954 which provides that livestock held for draft, dairy or breeding purposes constitutes property used in the trade or business, and that they are, therefore, invalid and of no force and effect.

2. That Plaintiffs are entitled to remove from inventory raised breeding animals included in inventory in compliance with the said Treasury Regulation in order to correct an error caused by the Regulation.[5]

3. That Plaintiffs are entitled to use zero as the basis of breeding animals sold during such years rather than the accrued unit value assigned to such animals in determining the amount of gain under the provisions of Section 1231 of the Internal Revenue Code of 1954.

4. That the correction of the error caused by the invalid Treasury Regulation does not constitute a change of accounting method, and therefore, Plaintiffs were not, and are not, required to obtain the consent of the Commissioner.

5. That even if a change of accounting method is involved, the law does not require a taxpayer to do a useless thing by applying to the Commissioner to change an item when the Commissioner arbitrarily refuses to consider and act upon such applications.

6. That the decision of the United States Court of Appeals for the Fifth Circuit in the case of Scofield v. Lewis, 251 F.2d 128, holding the Regulation in question invalid is controlling in this case.

(17) All findings of facts deemed conclusions of law are hereby adopted as conclusions of law.

### CONCLUSIONS OF LAW

From the foregoing facts the Court concludes as follows:

(1) This Court has jurisdiction of the subject matter of this action and the parties.

(2) In filing their Federal income tax returns for the years here involved, Plaintiffs erroneously, but in compliance with the provisions of Treasury Regulation Section 1.471-6(f), included within their inventory of livestock raised breeding animals which constituted a part of the breeding herd and which were held for breeding purposes. Scofield v. Lewis, 251 F.2d 128 (5th Cir. 1958) affirming the decision of the United States District Court, Western District of Texas, 57-1 U.S.T.C. par. 9251.

(3) Section 1231 of the Internal Revenue Code clearly and unequivocally states that livestock held for breeding purposes is property used in the trade or business of the taxpayer. As to such livestock, the taxpayers were not required to include them in inventory, or to use a unit-livestock-price method to determine the cost basis of animals sold. Scofield v. Lewis, supra, 251 F.2d at page 132.

(4) Treasury Regulation 1.471-6 (f), and specifically the portion thereof requiring the inclusion of breeding herd animals in a ranchman's inventory, is

5. The removal of such animals from inventory would be accomplished by:
    (1) Adjusting closing inventory in the years involved eliminating therefrom an amount equal to the accrued unit value of raised breeding animals sold during such years; and,
    (2) Ajusting closing inventory in the years involved eliminating therefrom

the unit value of those raised breeding herd animals involved in inventory for the first time in such years and not sold, and the increase in the unit value of those raised breeding herd animals in inventory from previous years and not sold during such years.

violative of, and is in conflict with Section 1231 of the Internal Revenue Code and is, therefore, invalid; consequently, the Plaintiffs should not have been compelled to include their raised breeding herd animals in inventory. Scofield v. Lewis, supra.

■ (5) The so-called rule that re-enactment of a statute gives the force of law to a prior regulation interpreting the statute is not applicable in this case (a) because the Defendant has failed to establish that Congress had general or specific knowledge of the portion of the regulations in question; [6] (b) because the portion of the regulations in question was not in fact a construction or interpretation of the statute but was an invalid provision in conflict with the statute, and (c) because the statute in question is clear and unequivocal and therefore the rule of re-enactment is not pertinent.[7]

(6) Plaintiffs are entitled to remove from inventory raised breeding animals included in inventory in compliance with the said Treasury Regulation in the manner claimed in order to correct an error caused by the Regulation. Scofield v. Lewis, supra.

■ (7) Plaintiffs are entitled to use zero as the basis of breeding animals sold during the years involved herein rather than the accrued unit values assigned to such animals in determining the amount of gain under the provisions of Section 1231 of the Internal Revenue Code of 1954. Scofield v. Lewis, supra.

■ (8) Section 446(e) of the Internal Revenue Code of 1954 and the Regulations applicable thereto, requiring the consent of the Commissioner of Internal Revenue to any change in accounting method have no application to a situation where a taxpayer seeks to remove from inventory items which, under the statute, qualify as property used in the trade or business, and which were improperly required by an invalid regulation to be included in inventory in the first place. Inasmuch as this removal does not involve a change of accounting method, neither the approval nor the consent of the Commissioner is required. In this situation, methods of accounting are not determinative of the tax liability, and for this reason neither approval nor consent of the Commissioner is required. Scofield v. Lewis, supra.

(9) The decision of the United States Court of Appeals for the Fifth Circuit in Scofield v. Lewis, supra, is controlling here.

■ (10) Plaintiffs' selection of the accrual (inventory) method of accounting and the unit-livestock-price method of valuing inventory when they commenced operating the ranches as a partnership in 1938 was not a meaningful choice, as at that time the statute did not authorize capital gains treatment on livestock used for draft, dairy or breeding purposes. It was not until 1951 that Congress specifically authorized capital gains treatment on livestock by amending Section 117(j) of the 1939 Code; and it was not until January 20, 1958 that the Court of Appeals for the Fifth Circuit decided the case of Scofield v. Lewis, supra. Thus, in any event, Plaintiffs did not have a knowledgeable choice as to accounting methods when they began operating their ranches as sole proprietorships, or when they filed their income tax returns for 1954 and 1955, and they have validly and timely corrected the error in their inventory practices resulting from the invalid regulation.

(11) Any conclusion of law deemed a conclusion of fact is hereby adopted as a finding of fact.

(12) Judgment shall be entered for the Plaintiffs for the amounts stipulated to be in controversy, together with costs.

6. See Mertens Law of Federal Income Taxation, Vol. 1, Sec. 3.25 Pages 49 and 51.

7. See Mertens, supra, at page 48, where it is stated that "The doctrine (of statutory re-enactment) has no application where the law itself is plain and needs no administrative construction * * *."