SCHUSTER'S EXPRESS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7420-73.    Filed June 24, 1976.

*Newton D. Brenner,* for the petitioner.
*Robert S. Walker,* for the respondent.

GOFFE, *Judge:* The Commissioner determined the following deficiencies in petitioner's Federal income tax:

| TYE June 30— | Deficiency |
|---|---|
| 1967 | $20,405.28 |
| 1968 | 57,920.83 |
| 1969 | 10,702.00 |

Concessions having been made by petitioner, the principal issues for decision are whether respondent's change in petitioner's accounting treatment of insurance expense constitutes a "change in method of accounting" within the meaning of section 481 of the Internal Revenue Code of 1954;[1] and, if so, whether respondent correctly adjusted petitioner's taxable income for the taxable year ended June 30, 1968.

### FINDINGS OF FACT

Most of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference.

Petitioner, a Connecticut corporation, is a common carrier of freight by motor vehicle and had its principal place of business in Colchester, Conn., at the time it filed its petition in this proceeding. Petitioner filed its Federal income tax returns with the District Director, Hartford, Conn., for the taxable years ended June 30, 1967, and June 30, 1968, and with the Internal

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Revenue Service Center, Andover, Mass., for the taxable years ended June 30, 1969, and June 30, 1970.

Petitioner maintained its books and filed its Federal income tax returns for the taxable years ended June 30, 1966, through June 30, 1970, under the accrual method of accounting. Petitioner maintained its records so that monthly operating reports would be available to its executives. The officers of the company required that a stated percentage of revenue be used in computing certain expenses for the monthly operating reports rather than the actual expenses incurred and paid for during that month. This system was used where monthly disbursements for a particular expense item fluctuated widely from month to month. However, management felt that it could accurately predict the amount of such expense for the year. During years prior to the taxable year ended June 30, 1966, most of the expense accounts which were maintained on an estimated basis for monthly reporting purposes were adjusted to reflect actual disbursements at the close of the year involved.

In connection with its business operations, petitioner incurred expenses for costs of insurance. Some of the forms of coverage carried by petitioner provided for retrospective audit adjustments. Petitioner's insurance costs for any period could not be accurately determined until an audit of applicable factors had been conducted by representatives of the insurance carrier. In addition to insurance coverage obtained from various insurance companies, the petitioner operated as a self-insurer with respect to certain aspects of its operation, principally payments to shippers or consignees for lost or damaged freight and losses to petitioner's motor vehicle equipment through accidents which were in the "loss deductible" portion of its collision coverage.

For the taxable years ended June 30, 1966, through June 30, 1968, petitioner maintained its insurance expense accounts, including those accounts relating to items for which it acted as a self-insurer, on the basis of a predetermined percentage of gross receipts. The amount by which such estimated expenses exceeded actual cash disbursements for such items was reflected on petitioner's books by the increase in the credit balance of the "Reserve for Insurance" account during such years. The amount of insurance expense so computed on an estimated basis was claimed by petitioner as a deduction on its Federal income tax returns for the taxable years ended June 30, 1966, and June 30,

1967. In connection with closing its books for the taxable year ended June 30, 1968, petitioner was concerned that the amount outstanding as a credit balance to its insurance reserve account did not reflect an identifiable liability for which it was responsible under the terms of any agreements with its insurance carriers. After reviewing its freight claims register, petitioner concluded that a reserve balance of $99,138 would be appropriate to reflect the potential liability for settlement of its outstanding freight loss and damage claims. Accordingly, the credit balance of the reserve account was reduced to $99,138 by means of an appropriate adjusting entry. The amount of the insurance expense deduction claimed by petitioner on its Federal income tax return for the taxable year ended June 30, 1968, was equal to the amount of estimated insurance expense items reduced by the amount of the adjusting entry to the reserve account. The amount by which the insurance expense deduction claimed by petitioner on its income tax return for the taxable year ended June 30, 1968, exceeded the amount of actual cash expenditures for such items was reflected on petitioner's books by the net addition to the credit balance of the reserve account for such year. In July 1968 the "Reserve for Insurance" account was closed and the balance thereof was transferred to an account entitled "Reserve for Loss and Damage Claims." During the taxable years ended June 30, 1969, and June 30, 1970, petitioner computed its expenses for loss and damage claims for both monthly reporting and Federal income tax purposes on the basis of a certain percentage of gross receipts. The amount by which the expense deduction claimed for such items exceeded actual cash expenditures in each year was equal to the amount of the increase in the credit balance of the "Reserve for Loss and Damage Claim" account during such year.

The amounts charged to the relevant expense accounts and claimed on petitioner's income tax returns, the actual cash disbursements, and the ending balances in the reserve accounts for the taxable years ended June 30, 1966, through June 30, 1970, were as follows:

| TYE June 30— | Insurance expense | Loss and damage expense | Cash disbursements | Ending balance in reserve accounts |
|---|---|---|---|---|
| 1966 | $387,471 | - - - | $317,491 | $69,980 |
| 1967 | 371,763 | - - - | 368,723 | 73,020 |
| 1968 | 413,198 | - - - | 387,080 | 99,138 |
| 1969 | - - - | $120,598 | 100,330 | 119,406 |
| 1970 | - - - | 166,375 | 92,841 | 192,940 |

The Commissioner, in his statutory notice of deficiency, increased petitioner's taxable income for the taxable years ended June 30, 1968, June 30, 1969, and June 30, 1970, in the amounts of $99,138, $20,268.94, and $73,533.32, respectively, and included the following statement as his basis for adjustment:

It is determined that the estimated additions to a reserve for loss and damage claims based on a percentage of net sales each month and claimed as a deduction is disallowed because you have not established that you are entitled to such a deduction. * * *

### OPINION

Petitioner maintained its books and filed its Federal income tax returns for the taxable years ended June 30, 1966, through June 30, 1970, under the accrual method of accounting. During each of these years petitioner maintained certain expense accounts on the basis of estimates. An expense deduction based upon such estimates was claimed by petitioner on its Federal income tax returns for the taxable years ended June 30, 1966, through June 30, 1970. In each year the deduction claimed by petitioner on its income tax return exceeded actual cash disbursements for such items. The amount by which the deduction claimed exceeded actual cash expenditures in each year was reflected on petitioner's books by an increase in the credit balance of a reserve account. The Commissioner, in his statutory notice of deficiency, increased petitioner's taxable income for the taxable year ended June 30, 1968, in an amount equal to the balance of the insurance reserve account as of June 30, 1968. He also increased petitioner's taxable income for the years ended June 30, 1969, and June 30, 1970, in amounts equal to the respective additions to the loss and damage claim reserve account for those years. Petitioner admits the correctness of the disallowance of the deductions claimed in excess of actual expenditures for the taxable years ended June 30, 1968, through June 30, 1970, but contends that the disallowance of excessive deductions claimed in the taxable years ended June 30, 1966, and

June 30, 1967, is barred by the statute of limitations in absence of the applicability of section 481.

After concluding at trial that respondent's intended reliance on section 481 constituted a new theory not within the breadth of the statutory notice of deficiency, we ruled that respondent must bear the burden of proof with respect to the applicability of section 481 to the facts of this case. *Estate of Akos Anthony Horvath,* 59 T.C. 551 (1973); *Arthur Sorin,* 29 T.C. 959 (1958). Rule 142(a), Tax Court Rules of Practice and Procedure. However, before passing to the question of the applicability of section 481, we must first face petitioner's procedural argument that respondent is precluded from relying on section 481 to support his determination because notice of such reliance does not appear in the notice of deficiency or the pleadings filed prior to trial. Petitioner conceded at trial that he was apprised of respondent's intention to proceed under section 481 several months prior to trial and that there was no reason for the case to be continued. *Commissioner v. Transport Manufacturing & Equipment Co.,* 478 F.2d 731 (8th Cir. 1973), relied upon by petitioner, is clearly distinguishable. In that case, the Eighth Circuit, in affirming this Court's holding that respondent could not rely on section 482 for the first time on brief, made the following observation at page 736:

Although the most appropriate times to advise the taxpayer of the Commissioner's theories to sustain an assessment would be first in the notice of deficiency and then in the Commissioner's answer, we do not hold that the Commissioner necessarily loses his right to pursue a theory or Code section that is not specifically raised before or at trial. The basic consideration is whether the taxpayer is surprised and disadvantaged when the Commissioner has failed to plead § 482. Commissioner v. Chelsea Products, *supra* at 197 F.2d 624; Nat Harrison Associates, Inc., *supra* 42 T.C. at 617; Burrell Groves, Inc. 16 T.C. 1163, 1169 (1951). However, the longer the Commissioner delays in not expressly advising the taxpayer of the intended theories, the more reason there is to conclude that the taxpayer has not received fair notice and has been substantially prejudiced so as to deny the Commissioner consideration of theories raised for the first time in post trial briefs. The Commissioner may avoid this uncertainty and discharge his duty of informing the taxpayer by expressly notifying the taxpayer of the intended theories in the deficiency notice and the Commissioner's answer.

Thus, the rule controlling respondent's right to rely on a particular theory is dependent upon his providing petitioner fair warning of his intention to proceed under such theory. "Fair

warning in this context means that a taxpayer must not, by reason of the Commissioner's failure to timely notify him, have been prejudiced or harmed in his ability to prepare for trial." *Richard Rubin,* 56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972). As previously indicated, petitioner readily admitted at trial that notice of respondent's intention to proceed under section 481 was given well in advance of trial. Accordingly, we hold that respondent may properly rely on section 481.

Having concluded that respondent may rely upon section 481 in support of his determination, we must now decide whether section 481 is applicable and permits respondent to include in petitioner's income for the taxable year ended June 30, 1968, the balance of the insurance reserve account as of June 30, 1967.

Section 481 [2] prescribes the rules to be followed in computing taxable income in cases where taxable income is computed under a method of accounting different from that under which it was previously computed. Its purpose is to prevent any income from escaping tax or being taxed twice solely because of a change in method of accounting. While respondent is precluded by the statute of limitations from determining "deficiencies" in income tax for any of the years prior to the taxable year ended June 30, 1968, section 481, if applicable, would authorize an adjustment to income for the taxable year ended June 30, 1968, for the amount of insurance expenses erroneously deducted under petitioner's accounting practice during closed years.

Petitioner's contention is that section 481 is not applicable for the reason that there has been no "change in method of accounting," the prerequisite for the application of section 481, but rather a mere correction of an erroneous accounting practice, relying upon *W. A. Holt Co. v. United States,* 368 F.2d 311 (5th Cir. 1966); *United States v. Catto,* 223 F. Supp. 663 (W.D. Tex. 1963), affd. per curiam 344 F.2d 227 (5th Cir. 1965), revd. on

---

[2] SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change") —

    (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

    (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

other grounds 384 U.S. 102 (1966); *Walter H. Potter,* 44 T.C. 159 (1965). Respondent maintains that the change in petitioner's accounting practice constitutes a "change in method of accounting" and that the balance of the insurance reserve account on June 30, 1967, must be included in income for the taxable year ended June 30, 1968, under section 481 in order to prevent a double deduction from resulting from the change in method of accounting.

Section 481 does not define the phrase "change in method of accounting." The applicable regulations provide that a "change in method of accounting" includes a "change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan." Sec. 1.446-1(e)(2)(ii), Income Tax Regs. Overall methods of accounting include the cash receipts and disbursements method, an accrual method, and combinations of such methods. Sec. 1.446-1(a)(1), Income Tax Regs. Petitioner, an accrual basis taxpayer, was not required by respondent to change its overall method but merely to change the manner of computing its insurance expense for the taxable year ended June 30, 1968. Thus, to come within the meaning of the phrase "change in method of accounting," there must have been a change in the treatment of a "material item."

"A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)(*a*), Income Tax Regs. A "change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)(*b*), Income Tax Regs.

In *W. A. Holt Co. v. United States,* 368 F.2d 311 (5th Cir. 1966), relied upon by petitioner, the Fifth Circuit, in holding that a taxpayer's practice of charging off nonworthless debts was not a "method of accounting" within the meaning of sections 446 and 481, stated:

The practice of charging off accounts which were not in fact worthless when charged off is not a method of accounting. * * * This practice is nothing more than a method of distorting income in favor of the taxpayer. * * *

Taxpayer relies upon Fruehauf Trailer Company v. Commissioner of Internal Revenue, 1964, 42 T.C. 83. * * * *Fruehauf* is not persuasive. It involved the timing of the deduction, i.e., which year. Here we are concerned only with

improper deductions. We hold that there was no change in method of accounting. Thus, the first condition of §481 was not met. * * * [368 F.2d at 312-313.]

In the instant case we are concerned with a practice involving deductions based upon estimates which, like the practice in question in *W.A. Holt Co. v. United States, supra,* apparently fails to relate to the proper timing of the deduction.

*Peoples Bank & Trust Co.,* 50 T.C. 750 (1968), affd. 415 F.2d 1341 (7th Cir. 1969), cited by respondent, is clearly distinguishable. In that case the taxpayer, under the terms of agreements with depositors, computed interest semiannually and credited it to the depositors' accounts on May 1 and November 1 of each year. Interest on funds on deposit during November and December was paid only to the extent that all or a portion thereof was on deposit on May 1 of the following year. Although no actual credits were made to accounts for funds on deposit at the end of each year, the taxpayer claimed an interest expense deduction in the amount of the balance of a reserve account existing at the end of each year which reflected the estimated portion of the interest credits to be made on May 1 of the following year allocable to the months of November and December. The interest expense deduction claimed for each succeeding year was computed by reducing the actual credits made during the year by the amount of the estimated portion of the prior year's interest expense deduction. We held that interest expense for the months of November and December was "improperly accrued" and that respondent made a proper adjustment under the provisions of section 481. The facts of that case differ from those before us in that the taxpayer's practice relating to interest expense, although erroneous, properly reflected the taxpayer's lifetime income as a result of the restoration of the improper portion of the deduction to income in the following year; therefore, the question relating to the treatment of the item was only one of *timing,* i.e., which year. Respondent, the party on whom the burden of proof rests, has not established that under petitioner's method of computing insurance expense there was any procedure or intention to restore the excessive deductions to income in future years so as to properly reflect petitioner's total lifetime income. The deductions claimed for insurance expenses in excess of actual expenditures do not appear to properly belong in any taxable

period. Thus, we do not have before us a case involving the proper *time* for the taking of a deduction. Under the regulations, a change in method of accounting does not include a change in the treatment of an item which does not involve the proper time for the inclusion of the item of income or the taking of a deduction. Sec. 1.446-1(e)(2)(ii)(*b*), Income Tax Regs.

In addition, there is support for the proposition that section 481 is directed only at those accounting practices which do not avoid the reporting of income, i.e., those practices which properly reflect an item's effect upon a taxpayer's lifetime income. Their usual effect is merely to postpone the reporting of income.[3] To this effect, the court in *Graff Chevrolet Co. v. Campbell,* 343 F.2d 568 (5th Cir. 1965), in holding that section 481 gives respondent the power to tax amounts that should have been reported in closed years, stated at page 572:

"When a taxpayer uses an accounting method which reflects an expense before it is proper to do so or which defers an item of income that should be reported currently, he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income; he has impliedly promised to report that income at a later date, when his accounting method, improper though it may be, would require it. Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest." Note, Problems Arising from Changes in Tax-Accounting Methods, 73 Harv.L.Rev. 1564, 1576 (1960).

See also *Peoples Bank & Trust Co. v. Commissioner,* 415 F.2d 1341, 1344 (7th Cir. 1969), affg. 50 T.C. 750 (1968). Under petitioner's method of computing its insurance expense deduction, its lifetime income would clearly have been distorted. Accordingly, based on the foregoing, we hold that respondent's change in the treatment of petitioner's insurance expense did not constitute a "change in method of accounting." Thus, the first condition of section 481 has not been met.

Even assuming that petitioner's accounting practice with respect to items of insurance expense for the taxable years ended June 30, 1966, through June 30, 1968, constitutes a "method of accounting," respondent would still not be permitted under section 481 to include in petitioner's income for the taxable year ended June 30, 1968, the balance of the insurance reserve

---

[3] Hearings on H.R. 8300 Before the Senate Comm. on Finance, 83d Cong., 2d Sess. 2420 (1954); Note, "Problems Arising from Changes in Tax-Accounting Methods," 73 Harv. L.Rev. 1564, 1568 (1960).

account as of June 30, 1967. The proposed effect of section 481 is explained in the following statement of the Senate Finance Committee:

If there is a change in the method of accounting employed in computing taxable income from the method employed for the preceding taxable year, adjustments must be made in order that every item of gross income or deduction is taken into account and that none are omitted. At the same time no item is to affect the computation of taxable income more than once. *It is only those omissions or doubling ups which are due to the change in method which must be adjusted.* [Emphasis added. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 307 (1954).]

Thus, a duplication or omission must be caused solely by the change in method of accounting in order for a compensating adjustment to be required under section 481. Section 481 does not provide a means by which all errors of past years during which a different method of accounting was used may be corrected. *Fred P. Pursell,* 38 T.C. 263 (1962), affd. per curiam 315 F.2d 629 (3d Cir. 1963). The "duplication" which respondent seeks to reach under section 481, the balance of the insurance reserve account as of June 30, 1967, was not caused "solely by reason of the change." Petitioner's total income would have been distorted by the improper deductions even in absence of the change because of the failure of such "method" to account for the excessive deductions in future years. Thus, the requisite relationship between the "duplications" and the change in method of accounting is not present. This conclusion lends support to our holding that no change in method of accounting occurred, for it is unlikely that a change in method of accounting within the meaning of section 481 would occur without omissions or duplications resulting from the change.

Although the issue is not before us, it appears that respondent is not without a remedy. When our decision becomes final, sections 1311-1314 may be available to permit respondent to recover revenues lost in barred years. See *North Carolina Granite Corp.,* 43 T.C. 149 (1964); *Kenosha Auto Transport Corp.,* 28 T.C. 421 (1957).

*Decision will be entered under Rule 155.*