JACK EUGENE FLEMING and CAROLYN DELL FLEMING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fleming v. Commissioner
Docket Nos. 25460-82, 13415-83.
United States Tax Court
T.C. Memo 1985-165; 1985 Tax Ct. Memo LEXIS 472; 49 T.C.M. (CCH) 1134; T.C.M. (RIA) 85165; April 2, 1985. Jack Eugene Fleming and Carolyn Dell Fleming, pro se. Barbara E. Horan, for the respondent in Docket No. 25460-82. Byron Calderon, for the respondent in Docket No. 13415-83. *473 SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge *: By statutory notices of deficiency dated August 13, 1982 (for 1979) and May 19, 1983 (for 1980), respondent determined deficiencies in petitioners' Federal income tax liabilities and additions to tax as follows: Additions to Tax
Year
Deficiency
Section 6651(a) [1]
1979
$4,769
$655.08
1980
18,473
4,618.00
After concessions, the issues for decision are: (1) The amounts of investment tax credit to which petitioners are entitled in 1979 and 1980; (2) whether petitioners may deduct $12,431.50 as a partnership loss in 1979; (3) whether petitioners may deduct $929.17 in legal expenses incurred in 1979; and (4) whether petitioners are liable for additions to tax under section 6651(a)(1) in 1979. FINDINGS OF FACT Some of the facts *474 have been stipulated and are so found. Petitioners Jack Eugene Fleming and Carolyn Dell Fleming are husband and wife and resided in Colorado Springs, Colorado, at the time the petitions herein were filed. Petitioners filed their 1979 joint Federal income tax return late on October 16, 1980, and filed their 1980 joint Federal income tax return late on October 26, 1981. These cases were consolidated by order of this Court entered on September 5, 1984. [2] Petitioner Jack Eugene Fleming hereinafter will be referred to as "petitioner." During the years in controversy, petitioner and George Seeger (hereinafter referred to as "Seeger") each held a 50-percent partnership interest in F & S Warehouse (hereinafter referred to as "F & S"), which was formed to build and operate four commercial warehouses in Colorado Springs, Colorado. Petitioner, Seeger, and Albert *475 Smith (hereinafter referred to as "Smith") also had incorporated a construction company, Tri-Pro Construction Company (hereinafter referred to as "Tri-Pro"), in which each held one-third of the outstanding shares of stock. F & S contracted with Tri-Pro to build the warehouses and Smith, acting as Tri-Pro's construction manager, Supervised the day-to-day construction of the warehouses. Two of the warehouses constructed for F & S were 10-feet wide and two of the warehouses were 25-feet wide. Each warehouse had five or six interior wood-fram walls that spanned the width of the building. The storage rooms within each warehouse were, however, separated by moveable partitions. The moveable partitions consisted of large (1" thick by 8' height by 2' width) panels of gypsum coreboard or drywall that were glued together and placed in metal channels that had been secured to the floor and ceiling of each warehouse. The coreboard was anchored in place by wedging a strip of one-half-inch plywood into the metal channel. Financing for the warehouse construction project was secured by a construction loan made to F & S by a local bank.F & S made periodic payments to Tri-Pro, and Tri-Pro then *476 purchased the materials necessary for the construction of the warehouses from local building supply retailers. Those purchases apparently were made by bank check. Petitioner and Seeger were not aware that they were entitled to claim an investment tax credit for the moveable partitions in each warehouse until F & S' accountant, Larry Lowry (hereinafter referred to as "Lowry"), so informed them sometime after construction of the warehouses was completed in 1980. Upon completion of the warehouses, petitioner and Seeger had transferred to Smith their respective interests in Tri-Pro and, thus, any receipts or records that might have substantiated the cost basis of the moveable partitions were in Smith's possession. At Lowry's request, Smith and Seeger prepared an estimate of the costs incurred in constructing the moveable partitions by referring to Tri-Pro's checkbook register. Seeger gave that cost information to Lowry, and Lowry calculated the amounts of investment tax credit each partner (petitioner and Seeger) should claim on their individual Federal income tax returns for 1979 and 1980. Based on the information received from Lowry, petitioners reported on their 1979 and 1980 *477 Federal income tax returns a cost basis in the moveable partitions of $108,295 and $39,200, respectively. Petitioners claimed investment tax credits in the amount of $5,415 for 1979, based on a qualified investment of $54,150 (50-percent of $108,295), and in the amount of $7,375 [3] in 1980, based on a qualified investment of $19,600 (50-percent of $39,200). In his notices of deficiency, respondent disallowed the investment tax credits claimed by petitioners for the moveable partitions and asserted that the partitions did not "qualify for investment credit under section 38." Upon his subsequent examination of the partitions, respondent conceded that the partitions were moveable and did qualify for the investment tax credit, but disagreed with petitioners over the cost basis of the partitions and, therefore, over the amounts of investment credit to which petitioners were entitled in 1979 and 1980. The parties agree, however, that 73.42-percent of *478 the moveable partition system was placed in service in 1979 and that 26.58-percent of the moveable partition system was placed in service in 1980. In addition, respondent disallowed for lack of substantiation a partnership loss claimed by petitioners on their 1979 Federal income tax return in the amount of $12,431.50. Petitioner claims that that amount represents his share (50-percent) of the total loss incurred by F & S in 1979. The parties agree that a significant portion of the partnership loss is attributable to depreciation expenses claimed by the partnership with respect to the moveable partitions. The amount of partnership loss deducted by petitioners was based on information supplied to them by Lowry, and petitioners submitted Lowry's accounting work papers to substantiate the loss. Respondent also disallowed legal expenses in the amount of $929.17 claimed by petitioners in 1979. Respondent concedes that petitioner incurred those legal expenses but determined that the expenses represent capital expenditures relating to one of petitioner's businesses, known as Trailerville, and are not deductible. There is no evidence in the record with respect to the type of business *479 Trailerville conducts or the purpose for which the legal expenses were incurred. At trial in Denver, Colorado, petitioner, Seeger, Smith, and Lowry testified for petitioners. We found petitioners' witnesses to be forthright, candid, and credible in their recitation of the facts. The testimony of Tri-Pro's construction manager, Smith, particularly was convincing because he personally was involved in the day-to-day construction of the moveable partitions, he personally purchased the materials used in the construction, be has many years of experience in the construction business, and had little interest in the outcome of the issues presented herein. Respondent's agent, Eddie Fernandez, testified for respondent as an expert in building construction and building appraisal. Fernandez' testimony also was credible, particularly with respect to measurements of the moveable partitions he calculated based on drawings of the warehouses that were provided by the warehouse manager. Apparently petitioners do not dispute the accuracy of those measurements. Documentary evidence also was received, but neither party offered sales receipts, Tri-Pro's checkbook register, or photocopies of cancelled *480 checks to substantiate the cost of the materials actually used in constructing the partitions. The parties agree that, assuming any sales receipts were in fact issued, such receipts no longer exist. OPINION A credit against Federal income tax is allowed under section 38 for investments in certain types of depreciable property, as defined in Section 48(a) and (b), [4] that are placed in service by a taxpayer during the taxable year. In his notices of deficiency, respondent determined that the moveable partitions in petitioners' warehouses were not the type of property that qualifies for investment tax credit under section 38, and disallowed petitioners' credit. [5] At trial and on brief, respondent conceded that the moveable partitions did qualify for investment tax credit, but determined that the cost basis of the moveable partitions, and therefore, the amount of credit to which petitioners are entitled, had not been substantiated. *481 We first address a procedural issue raised by petitioners at trial and on brief. Petitioners contend that respondent's assertion that the cost basis of the moveable partitions has not been substantiated raises a "new matter" on which respondent bears the burden of proof under Rule 142(a). [6] Respondent argues that he has not raised a new matter because the explanations in his notices of deficiency of the disallowance of the investment credits were sufficiently broad to place in issue substantiation of the cost of the partitions. We agree with petitioners. When respondent asserts a new theory that alters the original deficiency or requires petitioners to present different evidence, respondent has introduced a new matter on which he bears the burden of proof. Achiro v. Commissioner,77 T.C. 881, 890 (1981); *482 Estate of Falese v. Commissioner,58 T.C. 895, 898-99 (1972); Rule 142(a). The factual basis required to substantiate the costs incurred in constructing the moveable partitions is entirely different from the factual basis required to establish that the partitions are the type of property that qualifies for investment tax credit under sections 38 and 48. Although the issue of substantiation of petitioners' cost basis in the moveable partitions was tried by the consent of the parties and did not surprise or disadvantage petitioners, the placement of the burden of proof on respondent is not altered merely because petitioners were forewarned of respondent's new theory. Schuster's Express, Inc. v. Commissioner,66 T.C. 588, 593-594 (1976), affd. 562 F.2d 39 (2d Cir. 1977). [7] Therefore, we hold that in his determination that the cost basis of petitioners' moveable partitions is not substantiated, respondent asserted a new issue on which he bears the burden of proof, and we treat the pleadings as if the issue had been raised by respondent in his answer. Rules 142(a) and 41(b)(1). [8]
*483 The parties agree that no receipts exist to substantiate the costs incurred in building and installing petitioners' moveable partitions. Therefore, each party presents alternative methods of estimating those costs. Essentially, the parties agree on the type of materials used to construct the partitions and on the individual price per item for those materials in 1979. The parties disagree over the quantity of materials used to construct the partitions and over the labor costs incurred to install the partitions. Petitioners present two estimates of the total cost basis in the moveable partitions, namely $147,495 and $170,887. [9] The first estimate, $147,495, was calculated by F & S' accountant Lowry, and reported to petitioners by letter dated July 31, 1980. Petitioners argue that Lowry's cost estimate is the most reliable because it is based on cost information obtained by Smith and Seeger from Tri-Pro's checkbook register. The second estimate *484 presented by petitioners, $170,887, is based on complicated method of comparing the estimated cost of materials in their moveable partition system with the estimated total cost (both labor and materials) of constructing a permanent partition system. In estimating the total cost of constructing a permanent partition system, petitioners rely on a sophisticated real estate appraisal guide published by Marshall and Swift Publication Company (hereinafter referred to as "Marshall & Swift"). On the basis of that comparison, petitioners estimate their labor costs. Respondent rejects petitioners' cost estimates. Respondent asserts that Lowry's estimate is based on the unverified oral reports of an interested party, Seeger, who, as a 50-percent partner in F & S, also claimed an investment tax credit for his share of the movable partitions. In addition, respondent contends that petitioners' estimate of the cost of a permanent partition system is erroneous and, therefore, petitioners' reliance on that estimate to calculate the labor costs incurred in the installation of the moveable partitions is misplaced. Respondent offers three estimates of the cost basis of petitioners' moveable partitions, *485 ranging from $47,592 to $58,482. First, respondent estimates the cost of materials used to construct the partitions to be $23,796. Respondent asserts that, generally, the cost of labor in a construction project is roughly equivalent to the cost of materials. Therefore, respondent calculates his first estimate of total cost to be $47,592, by doubling his estimate of the cost of materials ($23,796 times 2). Second, to estimate total cost, respondent uses a Marshall & Swift estimate of $ .54 per square foot, which represents the total costs (both labor and materials) of applying a one-half-inch sheet of gypsum coreboard to a preexisting wall as the interior facing thereof. Respondent multiplies that estimate by 2.5 ($ .54 times 2.5 equals $1.35 square foot) to account for the cost difference between one-inch coreboard, the type of coreboard installed by petitioners, and one-half-inch coreboard, the type of coreboard used in the Marshall & Swift estimate. Using that method, respondent estimates the total cost of the partitions to be $58,482 ($1.35 times 43,320 total square feet of partition). Third, respondent's agent, Fernandez, testified that he made an informal survey of building *486 contractors in the Colorado Springs area which indicated that it would have cost approximately $1.28 per square foot in 1979 to build and install a moveable partition system similar to the system constructed in the F & S warehouses. Based on the results of that survey, respondent offers a third estimate of $55,450 (1.28 times 43,320 square feet). Respondent would allow petitioners to claim $58,482, the most generous estimate, as their cost basis in the moveable partitions. Petitioners contest the estimates offered by respondent. First, petitioners argue that the construction of the moveable partitions is "labor-intensive"; that is, that the labor costs thereof far exceed the cost of materials. Second, petitioners argue that respondent's use of the Marshall & Swift estimate of applying coreboard to a preexisting wall ($ .54 per square foot) is inapplicable herein because the estimate fails to account for the costs (both materials and labor) of the "frame" that supported the coreboard in petitioners' moveable partition system. After a thorough examination of the testimonial and documentary evidence presented, we conclude that none of the estimates offered by the parties adequately *487 established the appropriate cost basis of the moveable partitions for the purpose of calculating the amount of investment tax credit to which petitioners are entitled. The following discussion briefly analyzes each estimate offered by the parties and explains the basis for our lack of confidence in those estimates. First, we accord little weight to the cost estimate in the amount of $147,495 prepared by F & S' accountant, Lowry. That estimate is based on information supplied to Lowry by Seeger and Smith, but neither Seeger nor Smith were able to specify the costs of individual items that were computed as part of the $147,495 total. Therefore, we have no basis from which to determine whether expenses in that amount actually were incurred or whether any of those expenses were incurred in the construction of the warehouses themselves, which costs are not subject to investment tax credit, rather than in the construction of the moveable partitions. Petitioners' second estimate (and respondent's second estimate as well) relies on the Marshall & Swift publication, which provides estimates of the total cost (including materials, labor, overhead, and profit) of various types of buildings *488 or portions thereof. Marshall & Swift does not provide an estimate for the cost of moveable partitions such as those installed in petitioners' warehouses. Therefore, both parties have compared petitioners' moveable partition system to other types of walls for which Marshall & Swift does provide an estimate of cost. Petitioners' second estimate ($170,887) assumes that the cost of their partition system is most closely similar to the cost of constructing a permanent, immoveable frame partition. In Marshall & Swift, a permanent frame partition consists of a metal or wooden frame with vertical studs that is secured to the floor and ceiling and to which one-half-inch pieces of gypsum coreboard are applied on each side. Marshall & Swift estimates that the total cost in 1979 of such a permanent frame partition was $1.29 per square foot of floor area. Petitioners (erroneously) conclude that the Marshall & Swift estimate for a permanent frame partition ($1.29 per square foot) excludes the cost of the coreboard facing. That is, petitioner argues that the $1.29 estimate includes only the cost of the "frame." Petitioners therefore add to that figure the Marshall & Swift estimate of the *489 cost of applying coreboard as the facing of a preexisting interior wall, which is $ .54 per square foot of wall space. By adding those two estimates together, petitioner calculates the total cost of a permanent frame partition to be approximately $1.83 per square foot. Petitioners' analysis from this point on becomes more complicated. Petitioners concede that the estimated cost of a permanent partition system would exceed the cost of their moveable partition system. Petitioners contend, however, that the ratio of the cost of materials to the cost of labor in both systems would be the same. Thus, petitioners endeavor to calculate the percentage of the total cost of a permanent frame partition that is attributable to the cost of materials and the percentage of total cost that is attributable to the cost of labor. Petitioners then apply those percentages to the estimated cost of materials in their moveable partition system to determine an estimate of total costs. Briefly, their analysis is as follows. Petitioners estimate the cost of materials used to construct a permanent frame partition. Petitioners then divide their estimate of the total cost of a permanent frame partition *490 ($1.83 per square foot) by their estimate of the cost of materials. Petitioners conclude that the cost of materials in a permanent frame partition represents 24-percent of the total cost and, accordingly, the cost of labor represents 76-percent of the total cost. Petitioners then calculate the estimated cost of materials in their moveable partition system to be $41,013. Assuming that the same ratio of cost of materials to the cost of labor applies to the construction and installation of their moveable partitions, petitioners next divide their estimate of the cost of materials in the moveable partitions by 24-percent, and conclude that their total cost in the partition system is $170,887 ($41,013 divided by .24), of which $129,874 or 76-percent, is attributable to labor costs. In support of that analysis, petitioners contend that the construction of a moveable partition is "labor-intensive." That contention is not totally without support. Smith testified that one could purchase one-half-inch gypsum coreboard installed for approximately $ .42 per square foot, of which $ .15 per square foot would represent the cost of materials. If Smith is correct, the material costs would constitute *491 36-percent of the total costs. We do not accept, however, petitioners' estimate that the cost of materials represents only 24-percent of the total cost of the moveable partitions. Petitioners' estimate of the total cost of a permanent frame partition ($1.83 per square foot), on which their estimate is based, is overinclusive in that it twice accounts for the costs (both materials and labor) of applying the gypsum coreboard. Thus, petitioners' reliance on that estimate as an indicator of the cost of their partition system is misplaced. In summary, we have little confidence in either of the estimates offered by petitioners to substantiate their cost basis in the moveable partitions. Turning next to respondent's three estimates of petitioners' costs, respondent first argues that labor costs incurred in installing a moveable partition system are equivalent to the cost of materials, resulting in an estimate of $47,592 ($23,796 times 2). In our opinion, however, respondent's first estimate, calculated by doubling his estimate of the cost of materials used in petitioners' moveable partition system, is not sufficiently substantiated to sustain his burden of proof, particularly in light *492 of some evidence that the type of construction involved herein is labor-intensive. Respondent's second estimate ($58,482) assumes that the cost of petitioners' partition system is similar to the Marshall & Swift estimate of the cost of applying one-half-inch gypsum coreboard to a preexisting wall as the interior facing of the wall. Marshall & Swift estimates that cost to be $ .54 per square foot of wall space. Respondent then multiplies that figure by 2.5 to account for the difference in the cost of one-inch pieces of coreboard, resulting in an estimate of $58,482 ($ .54 times 2.5 times 43,320 square feet).We reject respondent's second estimate because it is underinclusive in that it fails to account for the costs (both materials and labor) of installing the "frame" portion of petitioners' moveable partition system, such as the metal channels and plywood strips. Respondent's third estimate ($55,450) is apparently based on an informal survey of building contractors conducted by respondent's agent. The testimony concerning the informal survey is totally unsubstantiated and, in our view, is an insufficient basis from which to conclude that respondent's third estimate is reliable. *493 That view is supported by respondent's expert witness report which evidences the expert's misconception about the construction of the partitions, particularly as to the size of the gypsum coreboard used therein. Thus, in our judgment, neither party has calculated an accurate estimate of the cost basis of petitioners' moveable partitions. We have, however, relied to some extent on each party's estimates, among other evidence, as a basis for our determination of the cost basis of the moveable partitions. We adopt respondent's measurement of 5,415 liner feet, or 43,320 square feet (5,415 linear feet times 8-foot height), in petitioners' partition system because petitioner has not presented alternative measurements and in fact has relied on respondent's measurements in their estimates. In our view, respondent's second estimate of $58,482 is the most accurate approximation of petitioners' actual cost of the moveable partitions. That estimate accounts for both material and labor costs of installing one-inch coreboard to a preexisting wall. We must, however, add to that estimate the cost incurred for materials to construct the partitions' "frame", and the cost of labor to build the *494 frame and install the coreboard therein. First, with respect to the unit price of the indiviudal components in the frame, we adopt the parties' agreement as to three categories of frame components, and we adopt Smith's estimates of the remaining two categories. Second, with respect to the quantity of materials used to build the frame, we adopt Smith's estimates in the four categories in which the parties disagree. In our opinion, the most appropriate figure for the cost of materials used in the frame portion of petitioners' moveable partitions is $9,483. [10]
Next, we must estimate the cost of labor to build the frame and install the coreboard therein. In our opinion, and on *495 the basis of the record herein, we estimate those labor costs to be approximately equal to the estimated cost of materials used to construct the frame. Thus, we add $10,000 as an estimate of the labor costs incurred in building the frame portion of the partitions at issue. In summary, the cost basis of petitioners' moveable partition system may be itemized as follows: (1) Respondent's estimate of the costs of
materials and labor of applying one-inch
gypsum coreboard to a preexisting wall
($ .54 times 2.5 times 43,320 sq. ft.)
$58,482
(2) Cost of materials in the "frame"
9,483
(3) Estimated labor costs of installing the
"frame"
10,000
Total cost basis of moveable partitions:
$77,965
Therefore, we hold that the total cost basis of petitioners' moveable partition system is $77,965, of which 73.42-percent ($57,242) was placed in service in 1979 and of which 26.58-percent ($20,723) was placed in service in 1980. Thus, petitioner may claim investment tax credits based on qualified investments in the amounts of $28,621 (50-percent of $57,242) and $10,361.50 (50-percent of $20,723) in 1979 and 1980, respectively. Partnership Loss
Respondent disallowed *496 petitioners' partnership loss in 1979 in the amount of $12,431.50 for lack of substantation. Respondent concedes that a "significant portion" of the loss is attributable to depreciation expenses claimed by petitioners with respect to the moveable partitions installed in the F & S warehouses. Neither party, however, offers any evidence that would allow the Court to determine the extent to which the partnership loss is comprised of those depreciation expenses. Petitioner submitted as evidence some of Lowry's accounting work papers, summary sheets, and correspondence to substantiate the claimed partnership loss. Lowry also testified at trial, but his testimony centered specifically on his computation of the cost basis of moveable partitions and did not explain the extent to which F & S' expenses or income, if any, had been reflected in petitioners' deduction for the partnership loss. Without some documentation in the form of receipts, or reliable testimony supporting the accounting worksheets, we cannot determine whether the amount reflected as partnership loss was properly computed and allocated to petitioner or whether any such losses were incurred. We therefore hold that petitioners *497 are not entitled to deduct any portion of the $12,431.50 claimed as a partnership loss in 1979. Legal Expenses
Respondent disallowed $929.17 in legal expenses incurred by petitioner in 1979. In his opening statement at trial, respondent explained the disallowance of the claimed legal expenses in a general statement, indicating that the expenses were nondeductible capital expenditures. In his opening statement, petitioner explained that those expenses were incurred in a dispute with his partner over a business known as Trailerville. Neither side, however, offered any testimonial or documentary evidence concerning the issue. Petitioner failed to introduce any evidence on this issue, and we therefore are unable to authorize any deduction for legal expenses, on which petitioners bear the burden of proof. Rule 142(a). We therefore sustain respondent's disallowance of petitioners' legal expenses. Addition to Tax--Section 6651(a)(1)
Respondent determined additions to tax under section 6651(a)(1) [11] for 1979 and 1980, and asserted that petitioners did not establish a reasonable cause for the late filing of their 1979 and 1980 Federal income tax returns. Petitioners conceded *498 the addition for 1980 and presented no evidence with respect to the addition for 1979. On brief they contend that the failure to timely file was due to reasonable cause and not to willful neglect because they did not receive information from their accountant regarding the F & S warehouse partnership until July 31, 1980. Petitioners also assert that because they were under the impression that they would not owe any Federal income tax for 1979, they decided to file late, rather than to file in a timely fashion and amend their return upon receipt of the information concerning the partnership. *499 We agree with respondent that the evidence establishes that petitioners' delinquency was due to willful neglect and not due to reasonable cause. We sustain respondent's addition to tax under section 6651(a)(1). Decisions will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, Docket No. 13415-83 was reassigned from Judge Meade Whitaker to Judge Stephen J. Swift↩.
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect in the years in dispute, and all rule references are to the United States Tax Court Rules of Practice and Procedure.↩
2. After concessions, the sole issue in Docket No. 13415-83 is the amount of investment tax credit to which petitioners are entitled in 1980. The parties agree that all evidence available on that issue is contained in the record in Docket No. 25460-82 and agree to be bound with respect to that issue by our decision herein.↩
3. On their 1980 Federal income tax return, petitioners erroneously claimed $5,415 as investment tax credit carry-forward. That amount was the amount of investment credit claimed by petitioners in 1979 and disallowed by respondent.↩
4. Section 48 provides, in relevant part: (a) Section 38 Property.-- (1) In general.--Except as provided in this subsection, the term "section 38 property" means-- (A) tangible personal property (other than an air conditioning or heating unit), or (B) other tangible property (not including a building and its structural components) * * * Such term includes only recovery property (within the meaning of section 168 without regard to any useful life) and any other property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more. * * * ↩
5. In his notice of deficiency dated August 13, 1982, for taxable year 1979 (docket no. 25460-82), respondent offered the following explanation for his disallowance of the investment tax credit: The $5,415.00 shown as an investment credit on F & S Warehouse Property is disallowed because it has not been established that the property qualifies for the investment credit under section 38 of the Internal Revenue Code. Therefore your tax is increased $5,415.00. A similar explanation was offered in respondent's notice of deficiency for taxable year 1980, dated May 19, 1983 (docket no. 13415-83): The $7,375.00 shown as an investment credit is disallowed because (a) the property does not qualify for the investment credit under section (38) of the Internal Revenue Code, and (b)↩ there is no carry-over of credit as a result of audit adjustments to taxable year 1979.
6. Rule 142(a) provides: (a) General: The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in his answer, it shall be upon the respondent. As to affirmative defenses, see Rule 39.↩
7. Denman v. Commissioner,T.C. Memo. 1981-332↩. 8. Rule 41(b)(1) provides, in relevant part: (b) Amendments to Conform to the Evidence: (1) Issues Tried by Consent:↩ When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * *
9. For simplicity, our discussion will center on calculations of the total cost basis of petitioner's moveable partition system; those total costs will then be allocated between 1979 and 1980 according to the agreement of the parties.↩
10. The costs for the frame portion of the partitions may be itemized as follows: ↩
Total
Material
Categories
Unit Price
Quantity
Cost
Glue
$4.75 per tube
150 tubes
$ 713
Metal channel
.50 per linear ft.
10,830 linear ft.
5,415
Concrete fasteners
.60 per fastener
4,061 fasteners
2,437
Plywood
14.00 per sheet
57 sheets
798
Nails
30.00 per building
4 buildings
120
Total Cost of Materials in the Frame
$9,483
11. Section 6651(a)(1) provides in relevant part: (a) Addition to the Tax.--In case of failure-- (1) to file any return * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during with such failure continues, not exceeding 25 percent in the aggregate; * * *↩